COMMISSIONER OF INTERNAL REVENUE *v.* HEININGER.

No. 63. Argued November 12, 1943.—Decided December 20, 1943.

*Mr. Valentine Brookes,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Messrs. Sewall Key* and *J. Louis Monarch* were on the brief, for petitioner.

*Mr. Floyd Lanham* for respondent.

*Mr. Henry J. Richardson* filed a brief, as *amicus curiae,* in support of respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The question here is whether lawyer's fees and related legal expenses paid by respondent are deductible from his gross income under § 23 (a) of the Revenue Acts of 1936 and 1938 as ordinary and necessary expenses incurred in carrying on his business.[1]

---

[1] Revenue Act of 1936, c. 690, 49 Stat. 1658.

"Sec. 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, . . ."

Section 23 (a) of the Revenue Act of 1938, c. 289, 52 Stat. 460, is identical with § 23 (a) of the Revenue Act of 1936.

The fees and expenses were incurred under the following circumstances. From 1926 through 1938 respondent, a licensed dentist of Chicago, Illinois, made and sold false teeth. During the tax years 1937 and 1938 this was his principal business activity. His was a mail order business. His products were ordered, delivered, and paid for by mail. Circulars and advertisements sent through the mail proclaimed the virtues of his goods in lavish terms. At hearings held before the Solicitor of the Post Office Department pursuant to U. S. C., Title 39, §§ 259 and 732, respondent strongly defended the quality of his workmanship and the truthfulness of every statement made in his advertisements, but the Postmaster General found that some of the statements were misleading and some claimed virtues for his goods which did not exist. Thereupon, on February 19, 1938, a fraud order was issued forbidding the Postmaster of Chicago to pay any money orders drawn to respondent and directing that all letters addressed to him be stamped "Fraudulent" and returned to the senders. Such a sweeping deprivation of access to the mails meant destruction of respondent's business. He therefore promptly sought an injunction in a United States District Court contending that there was no proper evidential basis for the fraud order. On review of the record that Court agreed with him and enjoined its enforcement. The Court of Appeals drew different inferences from the record, held that the evidence did support the order, and remanded with instructions to dissolve the injunction and dismiss the bill. *Farley* v. *Heininger,* 105 F. 2d 79. Respondent's petition for certiorari was denied by this Court on October 9, 1939. *Heininger* v. *Farley,* 308 U. S. 587.

During the course of the litigation in the Post Office Department and the courts respondent incurred lawyer's fees and other legal expenses in the amount of $36,600, admitted to be reasonable. In filing his tax returns for the years

1937 and 1938 he claimed these litigation expenses as proper deductions from his gross receipts of $287,000 and $150,000. The Commissioner denied them on the ground that they did not constitute ordinary and necessary expenses of respondent's business. The Board of Tax Appeals[2] affirmed the Commissioner, 47 B. T. A. 95, and the Circuit Court of Appeals reversed and remanded. 133 F. 2d 567. We granted certiorari because of an alleged conflict with the decisions of other circuits.[3]

There can be no doubt that the legal expenses of respondent were directly connected with "carrying on" his business. *Kornhauser* v. *United States,* 276 U. S. 145, 153; cf. Appeal of Backer, 1 B. T. A. 214; *Pantages Theatre Co.* v. *Welch,* 71 F. 2d 68. Our enquiry therefore is limited to the narrow issue of whether these expenses were "ordinary and necessary" within the meaning of § 23 (a). In determining this issue we do not have the benefit of an interpretative departmental regulation defining the application of the words "ordinary and necessary" to the particular expenses here involved. Cf. *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326, 338. Nor do we have the benefit of the independent judgment of the Board of Tax Appeals. It did not deny the deductions claimed by respondent upon its own interpretation of the words "ordinary and necessary" as applied to its findings of fact. Cf. *Hormel* v. *Helvering,* 312 U. S. 552, 555, 556. The interpretation it adopted was declared to be required by the Second Circuit Court's reversal of the Board's view in National

---

[2] Section 504 (a) of the Revenue Act of 1942, c. 619, 56 Stat. 798, 957, U. S. C., Title 26, § 1100 changes the name of the Board of Tax Appeals to "The Tax Court of the United States."

[3] *Helvering* v. *National Outdoor Advertising Bureau,* 89 F. 2d 878 (C. C. A. 2); *Helvering* v. *Superior Wines & Liquors,* 134 F. 2d 373 (C. C. A. 8).

Outdoor Advertising Bureau *v.* Commissioner, 32 B. T. A. 1025.[4]

It is plain that respondent's legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. For respondent to employ a lawyer to defend his business from threatened destruction was "normal"; it was the response ordinarily to be expected. Cf. *Deputy* v. *du Pont,* 308 U. S. 488, 495; *Welch* v. *Helvering,* 290 U. S. 111, 114; *Kornhauser* v. *United States, supra.* Since the record contains no suggestion that the defense was in bad faith or that the attorney's fees were unreasonable, the expenses incurred in defending the business can also be assumed appropriate and helpful, and therefore "necessary." Cf. *Welch* v. *Helvering, supra,* 113; *Kornhauser* v. *United States, supra,* 152. The government does not deny that the litigation expenses would have been ordinary and necessary had the proceeding failed to convince the Postmaster General that respondent's representations were fraudulent.[5] Its argument is that dentists in the mail order business do not ordinarily and necessarily attempt to sell false teeth by

---

[4] *Helvering* v. *National Outdoor Advertisement Bureau, supra,* Note 3. In that case the taxpayer had incurred legal expenses defending a suit begun by the United States to enjoin violations of the Sherman Act. It had successfully defended part of the charges against it, but had agreed to the entry of a consent decree of injunction as to the balance. The Board held that all of the legal expenses were ordinary and were proximately connected with the taxpayer's business, and that to allow them as deductions would not be against public policy. The Circuit Court reversed as to that portion of the expenses attributable to the consent decree. See also *Helvering* v. *Superior Wines & Liquors, supra,* Note 3, where the Board was reversed for allowing a taxpayer in the liquor business to deduct lawyer's fees incurred in connection with a compromise of liability for civil penalties assessed for improper bookkeeping under U. S. C., Title 26, §§ 2857 *et seq.*

[5] See Note 8, *infra.*

fraudulent representations as to their quality; that respondent was found by the Postmaster General to have attempted to sell his products in this manner; and that therefore the litigation expenses, which he would not have incurred but for this attempt, cannot themselves be deemed ordinary and necessary. We think that this reasoning, though plausible, is unsound in that it fails to take into account the circumstances under which respondent incurred the litigation expenses. Cf. *Welch* v. *Helvering, supra,* 113, 114. Upon being served with notice of the proposed fraud order respondent was confronted with a new business problem which involved far more than the right to continue using his old advertisements. He was placed in a position in which not only his selling methods but also the continued existence of his lawful business were threatened with complete destruction. So far as appears from the record respondent did not believe, nor under our system of jurisprudence was he bound to believe, that a fraud order destroying his business was justified by the facts or the law. Therefore he did not voluntarily abandon the business but defended it by all available legal means. To say that this course of conduct and the expenses which it involved were extraordinary or unnecessary would be to ignore the ways of conduct and the forms of speech prevailing in the business world. Cf. *Welch* v. *Helvering, supra,* 115. Surely the expenses were no less ordinary or necessary than expenses resulting from the defense of a damage suit based on malpractice, or fraud, or breach of fiduciary duty. Yet in these latter cases legal expenses have been held deductible without regard to the success of the defense.[6]

---

[6] Malpractice: C. B. V.–1, 226; Fraud: *Helvering* v. *Hampton,* 79 F. 2d 358; Breach of fiduciary duty: Keeler *v.* Commissioner, 23 B. T. A. 467. See also the examples of deductible expenses set forth in *Kornhauser* v. *United States,* 276 U. S. 145.

The Bureau of Internal Revenue, the Board of Tax Appeals, and the federal courts have from time to time, however, narrowed the generally accepted meaning of the language used in § 23 (a) in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct. A review of the situations which have been held to belong in this category would serve no useful purpose for each case should depend upon its peculiar circumstances.[7] A few examples will suffice to illustrate the principle involved. Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment.[8] Similarly, one who has incurred expenses for certain types of lobbying and political pressure activities with a view to influencing federal legislation has been denied a deduction.[9] And a taxpayer who has made payments to an influential party precinct captain in order to obtain a state printing contract has not been allowed to deduct

---

[7] For a collection and analysis of many of the cases see Note (1941) 54 Harv. L. Rev. 852; 4 Mertens, Law of Federal Income Taxation (1942) §§ 25.35–25.37, 25.102–25.105.

[8] *Great Northern Ry. Co.* v. *Commissioner*, 40 F. 2d 372; Bonnie Bros. *v.* Commissioner, 15 B. T. A. 1231; *Burroughs Bldg. Material Co.* v. *Commissioner*, 47 F. 2d 178; Appeal of Columbus Bread Co., 4 B. T. A. 1126. A taxpayer who has been prosecuted under a federal or state statute and convicted of a crime has not been permitted a tax deduction for his attorney's fee. Estate of Thompson *v.* Commissioner, 21 B. T. A. 568; *Burroughs Bldg. Material Co.* v. *Commissioner, supra.* But if he has been acquitted, a deduction has been allowed. *Commissioner* v. *People's-Pittsburgh Trust Co.,* 60 F. 2d 187; cf. Citron-Byer Co. *v.* Commissioner, 21 B. T. A. 308; Headley *v.* Commissioner, 37 B. T. A. 738. Cf. *Helvering* v. *Superior Wines & Liquors, supra,* Note 3.

[9] *Textile Mills Securities Corp.* v. *Commissioner,* 314 U. S. 326, 338. Cf. *Commissioner* v. *Sunset Scavenger Co.,* 84 F. 2d 453.

their amount from gross income.[10] It has never been thought, however, that the mere fact that an expenditure bears a remote relation to an illegal act makes it non-deductible. The language of § 23 (a) contains no express reference to the lawful or unlawful character of the business expenses which are declared to be deductible. And the brief of the government in the instant case expressly disclaims any contention that the purpose of tax laws is to penalize illegal business by taxing gross instead of net income. Cf. *United States* v. *Sullivan*, 274 U. S. 259.

If the respondent's litigation expenses are to be denied deduction, it must be because allowance of the deduction would frustrate the sharply defined policies of 39 U. S. C. §§ 259 and 732 which authorize the Postmaster General to issue fraud orders. The single policy of these sections is to protect the public from fraudulent practices committed through the use of the mails. It is not their policy to impose personal punishment on violators; such punishment is provided by separate statute,[11] and can be imposed only in a judicial proceeding in which the accused has the benefit of constitutional and statutory safeguards appropriate to trial for a crime. Nor is it their policy to deter persons accused of violating their terms from employing counsel to assist in presenting a bona fide defense to a proposed fraud order. It follows that to allow the deduction of respondent's litigation expenses would not frustrate the policy of these statutes; and to deny the deduction would attach a serious punitive consequence to the Postmaster General's finding which Congress has not expressly or impliedly indicated should result from such a

---

[10] *Rugel* v. *Commissioner*, 127 F. 2d 393. Cf. Kelley-Dempsey & Co. *v.* Commissioner, 31 B. T. A. 351, where deduction was denied for the expense of commercial extortion.

[11] Criminal Code, § 215; 25 Stat. 873; 35 Stat. 1130; U. S. C., Title 18, § 338.

finding. We hold therefore that the Board of Tax Appeals was not required to regard the administrative finding of guilt under 39 U. S. C. §§ 259 and 732 as a rigid criterion of the deductibility of respondent's litigation expenses.

Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances. Except where a question of law is unmistakably involved a decision of the Board of Tax Appeals on these issues, having taken into account the presumption supporting the Commissioner's ruling,[12] should not be reversed by the federal appellate courts.[13] Careful adherence to this principle will result in a more orderly and uniform system of tax deductions in a field necessarily beset by innumerable complexities. Cf. *Hormel* v. *Helvering, supra.* However, as we have pointed out above, the Board of Tax Appeals here denied the claimed deduction not by an independent exercise of judgment but upon a mistaken conviction that denial was required as a matter of law. We therefore affirm the judgment of the Circuit Court of Appeals reversing and remanding the cause to the Board of Tax Appeals.

*Affirmed.*

---

[12] See *Welch* v. *Helvering,* 290 U. S. 111, 115.

[13] Cf. *Helvering* v. *Lazarus & Co.,* 308 U. S. 252, 255; *Dobson* v. *Commissioner, post,* p. 489.