HENRY WATTERSON HOTEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19926. Promulgated December 19, 1950.

---

*P. M. Harris, Esq.*, for the petitioner.
*J. O. Durkan, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* Respondent determined a deficiency of $8,600.33 in petitioner's excess profits tax for the calendar year 1945. The sole issue is whether a payment to the United States on March 2, 1945, for O. P. A. violations is an ordinary and necessary business expense entitled to deduction under section 23 (a) (1) (A) of the Internal Revenue Code. All of the facts have been stipulated, are so found, and are incorporated herein.

Petitioner filed its corporation income and excess profits tax return for 1945 with the collector of internal revenue at Louisville, Kentucky.

Petitioner is a Kentucky corporation, engaged in the operation of the Henry Watterson Hotel, Louisville, Kentucky, and was so engaged during the entire year 1945.

On or about August 27, 1942, as required by the Office of Price Administration, the petitioner filed with the Louisville Defense Area Office, Office of Price Administration, a registered statement purporting to show the highest rental rates charged for room occupancy at the hotel operated by it during the 30-day period ended July 1, 1941.

Subsequently the Office of Price Administration caused an examination to be made of the records of the petitioner and as a result thereof advised the petitioner that it appeared certain overcharges had been made in room rentals for the period August 1, 1942, to on or about December 31, 1944, and that the petitioner's registration statement did not reflect the true and correct rates or the highest rates charged during the 30-day period ended July 1, 1941.

On January 9, 1945, Chester Bowles, Price Administrator, Office of Price Administration, acting on behalf of the United States, filed a complaint in the United States District Court for the Western District of Kentucky against the petitioner. The complaint charged that defendant had engaged and threatened to engage in acts and practices which constituted violations of § 4 (a) of the Emergency Price Control Act of 1942, as amended, in that it had violated and threatened to violate Rent Regulations for Hotels and Rooming Houses, issued pursuant to such Act; that defendant had demanded and received rentals from guests and tenants in excess of the rate

established by the Regulations; that the overcharges for the period July 1, 1944 to November 20, 1944, amounted to $8,003.25, and that the tenants and guests had failed to institute an action against the defendant. The complaint prayed for an injunction against further violations and for an order requiring a correct registration of prices and judgment on behalf of the United States against defendant in the sum of $8,003.25 under § 205 (e) of such Act, and for costs.

On March 2, 1945, the petitioner made payment in the sum of $8,003.25 to the Treasurer of the United States by delivering its check in that amount to the Office of Price Administration. This payment was in settlement of the amount of $8,003.25 claimed to be due from the petitioner by the Office of Price Administration, as set forth in the complaint.

On or about March 3, 1945, the United States District Court for the Western District of Kentucky entered its final judgment and order in the proceeding. The decree recited that defendant had consented to entry of the judgment and order, and decreed that defendant be permanently enjoined from demanding or receiving rents in excess of those established by the regulations; be required correctly and properly to register its rooms pursuant to the regulations; allowed costs to the plaintiff, and decreed in part as follows:

It further appearing to the Court that the Plaintiff [the Price Administrator] and Defendant herein have effected a settlement relative to the $8,003.25 prayed for in Plaintiff's complaint, therefore it is further ordered and adjudged that the part of Plaintiff's complaint which seeks judgment against the Defendant for the sum of $8,003.25 or any sum of money, except Plaintiff's costs herein expended, be dismissed, settled.

In filing its income and profits tax returns for the calendar year 1945 the petitioner included the said item of $8,003.25 in other deductions as "O. P. A. settlement," thereby reducing its taxable net income by said amount.

Petitioner argues since the money was not paid under a court judgment, it is in the nature of a settlement or compromise payment, and as it arose from petitioner's business, that it is deductible. It is immaterial in what manner the amount is characterized; our problem is to determine whether the amount was an expense which was both ordinary and necessary. See *Scioto Provision Co.*, 9 T. C. 439.[1] Two recent decisions of the United States Courts of Appeal have considered this problem. *Rossman Corporation* v. *Commissioner*, 175 Fed. (2d) 711; *National Brass Works, Inc.* v. *Commissioner*, 182 Fed. (2d) 526.

In the *Rossman* case, the taxpayer unwittingly and innocently overcharged its customers. Upon learning of this, and before the O. P. A.

---

[1] It should be noted that I. T. 3627, referred to in the cited case, has been modified by I. T. 3799, 1946–1 C. B. 956, which points out the amendment to Section 205 (e) of the Emergency Price Control Act of 1942 by Section 108 (b) of the Stabilization Extension Act of 1944.

had started any investigation, the taxpayer paid an amount representing the overcharges to the United States since it could not repay it to the ultimate consumers who had paid it. The Court said that merely paying the amount of the overcharge is not the payment of a penalty, and went on to state that if it were in error and it was a penalty, that would not automatically prevent its deduction as an ordinary and necessary business expense. The Court applied the doctrine of *Commissioner* v. *Heininger*, 320 U. S. 467, and held that the deduction should be allowed since it would not frustrate the sharply defined policies of a statute. Whether such a deduction would frustrate such policy would depend upon the facts of each case.

In *National Brass Works, Inc.* v. *Commissioner, supra,* the same problem was considered where the taxpayer sold non-ferrous castings to customers at over-ceiling prices. This was discovered by O . P. A. investigators examining the taxpayer's books, and, thereafter, prior to the initiation of any proceedings to recover such overcharges under § 205 (e) of the Emergency Price Control Act of 1942, the taxpayer settled with the Government. The Court considered whether payments under § 205 (e) are penalties and cited numerous Federal court cases in which they have been characterized either as "penal" or "remedial." The Court said:

> While it would perhaps be convenient to attach a tag or label to civil liability for price violations, to do so by the use of the term "penalty" confuses more than it simplifies. What is considered a penalty differs with circumstances and viewpoints. That a payment was or was not in the nature of a penalty would give no quick nor sound answer to deductibility. However, if we had to decide the nature of damage payments to the government under Section 205 (e) we would liken them to penalties for reasons expressed in *Porter* v. *Montgomery*, 3 Cir., 163 Fed. (2d) 211 (1947). We doubt that 205 (e) was in any respect intended to provide for restitution. (Citing cases) (p. 529).

The Court held that the real reason for disallowing such deductions is not dependent upon their characterization as penalties, but because to allow such deductions would frustrate the purposes of a statute or violate public policy. The test of deductibility was set forth.

> * * * the sum paid to the government may be allowed as a business deduction when the overcharge has been innocently and unintentionally made and not made through an unreasonable lack of care. The whole question resolves itself into proof with the burden on the claimant. * * *
>
> No payment to the Administrator made for overcharges in circumstances incompatible with innocence or with reasonable care can be a necessary and ordinary expense. Allowance of the deduction in either of these situations would definitely tend to frustrate enforcement of the Price Control Act. (p. 530).

This Court recognized the proposition that where the overcharge is insignificant in amount, inadvertent and unintentional, and voluntarily disclosed, the deduction should be allowed in *Farmers Creamery Co. of Fredericksburg, Va.*, 14 T. C. 879. We held, following *Rossman*

*Corporation* v. *Commissioner, supra,* that to allow the taxpayer to take the deduction would not contravene public policy, where an innocent and insignificant error was voluntarily brought to the attention of the O. P. A. authorities.

In *Garibaldi & Cuneo,* 9 T. C. 446, we held that an amount paid to the United States in settlement of a suit for ceiling-price violations was not deductible as an ordinary and necessary business expense where the taxpayer had failed to show that it could not have made correct computations "if it had exercised ordinary diligence and reasonable intelligence in attempting to make such computations" (p. 447).

In the case at bar, petitioner has offered no explanations whatsoever as to the reasons for the overcharges. Unlike the *Rossman* or the *Farmers Creamery Co. of Fredericksburg, Va.* cases, the overcharges were not voluntarily disclosed but were discovered by O. P. A. investigators. Nor was the amount paid until several months after the suit for recovery was commenced. Petitioner failed to carry his burden to prove such an error was innocently made. The amount paid in settlement of the suit instituted under the Emergency Price Control Act was not an ordinary and necessary expense to petitioner in carrying on its business.

*Decision will be entered for the respondent.*