OPINION. Black, Judge: The sole question in this proceeding relates to the ■payment of $2,065,842.02 made by petitioner on November 22, 1944, to O. P. A. in settlement of a claim arising under section 205 (e) of the Emergency Price Control Act of 1942, as amended. Petitioner’s primary contention is that the $2,065,842.02 which it paid in 1944 in settlement with O. P. A. for alleged violation of the price control law and O. P. A. regulations is deductible as an ordinary and necessary business expense under section 23 (a) (1) (A), I. R. C., but that if the amount is not deductible as a business expense, it is deductible as a loss under section 23 (f) of the Code. These contentions are made under petitioner’s assignment of error (a) in its amended petition. In the alternative, petitioner contends that $1,287,-579.40, the amount of the payment to O. P. A. attributable to sales made and invoiced in 1944, was not includible at all in petitioner’s gross income for 1944. This alternative contention is made in petitioner’s assignment of error (b) in its amended petition. Respondent contends that the $2,065,842.02 is neither deductible as an ordinary and necessary business expense nor as a loss, and that petitioner may not exclude from gross income for 1944 any part of the amount paid to the O. P. A. on behalf of the United States. Where the O. P. A. has received payment from a taxpayer as a result of a claim under section 205 (e) of the Emergency Price Control Act of 1942, as amended, the payment is allowed as a deduction under section 23 (a) (1) (A) of the Code if the violation of the price regulation, order or schedule was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation (Jerry Rossman Corp. v. Commissioner, 175 F. 2d 711, reversing 10 T. C. 468), or if “The violation was inadvertent and unintentional rather than in deliberate or careless disregard of the law.” Farmers Creamery Co. of Fredericksburg, Va., 14 T. C. 879. The deduction has not been allowed, however, where the taxpayer has failed to show the violation was neither wilful nor the result of failure to take practicable precautions where the violation is not innocent and unintentional and made without the exercise of reasonable care. National Brass Works, Inc. v. Commissioner, 182 F. 2d 526; National Brass Works, Inc., 16 T. C. 1051; Henry Watterson Hotel Co., 15 T. C. 902; Garibaldi & Cuneo, 9 T. C. 446. The cases involving claimed deductions for payments made to O. P. A. under section 205 (e) of the Emergency Price Control Act of 1942, as amended, and which have allowed such payments as deductions rely on Commissioner v. Heininger, 320 U. S. 467, where the Supreme Court held that the legal expenses incurred in the unsuccessful defense of a postal fraud order were deductible. The Court said: “If the respondent’s litigation expenses are to be denied deduction, it must be because the allowance of the deduction would frustrate the sharply defined policies * * * which authorize the Postmaster General to issue fraud orders.” The Heininger case, supra, has been interpreted as applying not only to the deduction of legal expenses, but also to the deduction of payments to O. P. A. Jerry Rossman Corp. v. Commissioner; National Brass Works, Inc. v. Commissioner; Henry Watterson Hotel Co., all supra. The test is whether the allowance of the deduction will frustrate the sharply defined policies of the Emergency Price Control Act of 1942, as amended. In the Jerry Rossman case, Judge L. Hand, speaking for the court, said: * * * One may indeed argue, as the Commissioner does, that the more unsparing and relentless was the pursuit of offenders, however innocent they may have been of any wilful violation of the regulations, the more solicitous would they become to comply, and the more effective would be the enforcement of the Act. That has been a school of penology since the time of Draco; but it has not been the only school, and, as we read. Commissioner v. Heininger, supra, the Supreme Court did not accept it. The Administrator did not believe that such a rigid and uncomprising [sic] policy was the best way to realize the purposes of the Act. When the amendment to § 205 (e) was being considered in 1944, he declared in a letter to the Senate Committee “that the protection of innocent violators from excessive damages” was “obviously desirable”; and that it had been his “policy to adjust eases involving innocent violations by payment of merely the amount of the overcharge.” He thought that Congress had given him discretion not to sue for “treble damages” in some instances, and he had exercised that discretion so as “to avoid undue hardship in deserving cases.” [It may be noted in the instant case that O. P. A. Director did not ask for treble damages and none have been paid.] In short, he did not believe that it paid to sweep into the same pool with wilful or careless violators, violators for whom the daedalian mazes of the regulations had proved too much. Moreover Congress showed in 1944 by the amendment of § 205 (e) that it agreed with the Administrator. It seems to us that we should accept these expressions as evidence that in cases where the Administrator accepted the overcharge as sufficient, it did not “frustrate” any “sharply defined” policies of the Emergency Price Control Act of 1942. Since under the provisions of section 205 (e) of the Emergency Price Control Act of 1942, as amended, “if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation” the amount recoverable shall be the amount of the overcharge or $25, whichever is greater, the allowance as a deduction of payments to O. P. A., where this defense is shown, would not frustrate the policy of the act. Jerry Rossman Corp. v. Commissioner; National Brass Works, Inc. v. Commissioner, both supra. The purpose of the amendment to section 205 (e) whereby the treble damage provision could not be enforced against innocent violators was to reduce the possible severe “penalty” imposed upon those who could show their actions and mistakes were honest and without the intent to commit a violation — where practicable precautions had been taken and there was no wilful violation. 90 Cong. Eec. 5875-5384, 5435-5451, 5886-5887 (1944). In Garibaldi & Cuneo, supra, we held that the taxpayer could not deduct as an ordinary and necessary expense the payment to O. P. A. of one and one-half times the amount of the overcharges in settlement of an action for treble damages. In Garibaldi & Caneo we found that: The petitioner has failed to show that it could not have made correct computations of the maximum price on bananas under the applicable OPA regulation during the taxable year if it had exercised ordinary diligence and reasonable intelligence in attempting to make such computations. In Henry Watterson Hotel Co., supra, the taxpayer was not allowed to deduct the payments to O. P. A. where taxpayer “offered no explanation whatsoever as to the reasons for the overcharge,” and in National Brass Works, Inc., supra, we held that the taxpayer was not entitled to deduct a payment to O. P. A. where the taxpayer deliberately and knowlingly failed to comply with the price regulation and where it was not shown that the overcharge was innocently and unintentionally made. In National Brass Works, Inc., supra, we commented upon the rule that we considered had been followed in cases involving these O. P. A. overcharges in the following language: * * * But it appears from the Rossman case that “adequate care” means care to avoid the making of any overcharges knowingly. That is, if the overcharges were unwittingly and innocently made, as in the Rossman case, allowing a reduction of the overpayment of such overcharge would not “frustrate” the Price Control Act. As we read the Rossman case and the opinion of the Ninth Circuit in the present case on appeal, the opposite result should follow where the record shows the overcharge was deliberately or “intentionally made.” After a careful consideration of all the evidence we have found that in the instant proceeding petitioner, in good faith and with the exercise of reasonable care, calculated its ceiling prices which it believed were in accordance with MPR 163. The overcharges which it made were not deliberately nor intentionally made. In the instant proceeding the payment of O. P. A. was, as we have found in our Findings of Fact, in excess of the amount of the alleged overcharges for the statutory period of 1 year and respondent argues that because the total amount paid to O. P. A. was more than the amount of the overcharge for the statutory period this precludes any finding that the alleged violation was neither wilful nor the result of failure to exercise practicable precautions. Section 205 (e), Emergency Price Control Act of 1942, as amended. We think this contention is without any merit when the facts in evidence are considered. The payment here was a settlement and the district court proceeding and the judgment and injunction issued out of that proceeding were all by consent and without a decision on the merits. There is no finding by any court, as we found in the National Brass Works, Inc., case, supra, that the taxpayer “deliberately and knowingly failed to comply with the price regulations and had not shown that the overcharges were innocently and unintentionally made.” The whole purpose of the payment to O. P. A. in the instant case was to settle a claim for an alleged violation of MPR 163 which petitioner believed it did not violate, but, that if it did violate, it did so without any wilful intent. While petitioner paid $2,065,842.02 to O. P. A., its liability for treble damages for the statutory 1-year period might have been approximately $5,400,000. Although the payment to O. P. A. exceeded the statutory 1-year overcharges, the excess over this amount was not an arbitrary figure for the purpose of making the payment punitive, but rather the entire amount was carefully calculated to reflect the overcharges for the entire period from June 22, 1942, to the date of settlement in such a way as to remove petitioner’s profit from past overcharges. The administrative determination, if any, is not final on the question of adequate care (Jerry Bossman Corp. v. Commissioner, supra) as that question is to be judicially determined on the merits. National Brass Works, Inc. v. Commissioner, supra. See also Utica Knitting Co. v. Shaughnessy in the United States District Court for the Northern District of New York, decided September 4,1951. In that case it was held that the amounts paid to the Government in 1946 in settlement of damages for O. P. A. violations were deductible in that year on the accrual basis since there was a binding adjudication in that year as to taxpayer’s liability and neither wilfulness nor carelessness was involved in the violations. In rendering summary judgment for the plaintiff taxpayer, the court said: The decisions in the Jerry Bossman and National Brass Works cases, supra, eliminate the necessity of discussing and deciding several contentions made before this Court. They plainly hold that a deductible expense is not determined by the label placed thereon, and the question as to whether or not the payments made by the plaintiff here may be termed penalties is not decisive. Neither is the fact that a violation of law is directly involved. Each case must be decided upon its own facts. (Commissioner v. Heininger, 320 U. S. 467.) The decision follows, based upon the circumstances of the violation and the effect of the allowance of the deduction upon the enforcement of the law violated. Because we have found as a fact that the alleged violation of MPR 163 was neither wilful nor a result of failure to- take practicable precautions and was not a result of unreasonable lack of care, the payment of $2,065,842.02 which petitioner paid O. P. A. in 1944 was properly deducted by petitioner under section 23 (a) (1) (A) of the Internal Revenue Code in determining its net income. As a result of this holding, it is unnecessary for us to decide petitioner’s alternative contentions. Reviewed by the Court. Decision will be entered under Bule 50.