Hull Senator Company v. Commissioner.
Hull Senator Co. v. Commissioner
Docket No. 36092.
United States Tax Court
T.C. Memo 1954-185; 1954 Tax Ct. Memo LEXIS 59; 13 T.C.M. (CCH) 1005; T.C.M. (RIA) 54291; October 29, 1954, Filed *59 Petitioner paid the United States $21,194.16 in settlement of a suit against it by the O.P.A. for violating ceiling price regulations. Held, where there has been no showing that the violations were unintentional or not the result of failure to take adequate care to comply with the law petitioner is not entitled to deduct the amount paid as an ordinary and necessary business expense. Austin H. Beck, Jr., Esq., and Henry C. Diehl, Esq., for the petitioner. William P. Flynn, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income, declared value excess-profits, and excess-profits taxes of the petitioner for the fiscal year ended March 31, 1946, as follows: Tax
Deficiency
Income
$ 1,466.37
Declared Value Excess-Profits
370.03
Excess-Profits
10,081.32
Total
$11,917.72
*60 Of the several adjustments made by respondent in determining the deficiency only one is contested by the petitioner. The sole question for decision is whether the amount paid by petitioner to the United States in settlement of a suit against it by the Office of Price Administration for violation of ceiling price regulations is deductible as an ordinary and necessary business expense within the meaning of section 23(a)(1)(A) of the Internal Revenue Code of 1939. Findings of Fact Petitioner is a California corporation, engaged in the operation of the Hotel Senator, Sacramento, California. The returns for the year under review were filed with the collector of internal revenue for the first district of California. An examination of petitioner's books in the fall of 1944 by the Office of Price Administration disclosed certain violations of ceiling price regulations. Subsequently, on January 25, 1945, Chester Bowles, Price Administrator, Office of Price Administration, acting on behalf of the United States, filed a complaint for treble damages and an injunction in the United States District Court for the Northern District of California against petitioner pursuant to section 205(e) *61 of the Emergency Price Control Act of 1942, as amended. [1] The complaint alleged that petitioner had engaged in actions which constituted a violation of section 4(a) of the Price Control Act in that it had violated the Rent Regulations for Hotels and Rooming Houses, issued pursuant to the Act; that petitioner rented and offered for rent as housing accommodations certain room subject to the Regulations without filing a Registration Statement correctly setting forth all maximum rents established for the rooms; that petitioner had demanded and received rents higher than the maximum rent permitted by the Regulations; and that overcharges for the period July 1, 1944 to November 30, 1944 amounted to $6,915. *62 Thereafter the O.P.A. made an investigation of the charges for telephone service to petitioner's tenants. An amended complaint was filed on October 31, 1945, which alleged that in addition to the room rent overcharge petitioner had demanded and received from its tenants telephone charges of $6,163.44 in excess of the legal maximum for the period July 1, 1944 to March 31, 1945. The Rent Regulations for Hotels and Rooming Houses for the Sacramento Defense-Rental Area, 8 Fed. Reg. 7334, 7339, specified that the maximum rent for any given room was the highest rate at which it had actually been rented during the thirty days preceding March 1, 1942, or if there had been no rental of any particular room then what was held out to be the rental of the room during that period would be the ceiling price. Between January 31 and March 1, 1942, the petitioner maintained two schedules of rates for each type of accommodation in its hotel. It offered a standard rate for the public, i.e., the "room rack rates" which were posted in each room for single, double or triple occupancy, and a lower special daily, weekly, or monthly rate for guests in certain categories, such as state legislators, *63 state employees, and Service men. Shortly after the original complaint was filed the taxpayer petitioned the O.P.A. for permission to increase the rent on those rooms rented at special rates during the base period from special to standard "room rack rates." The petition was granted April 17, 1945. From February 1945 to March 1946 representatives of petitioner and those of O.P.A. attempted to negotiate a settlement of the suit. During the negotiations it was discovered that petitioner had made rent overcharges of $1,051 in addition to those set out in the original and amended complaints. Agreement was finally reached to settle the suit at one and one-half times the amount of the overcharges. About March 7, 1946, the petitioner paid $11,949 in settlement of rent overcharges of $7,966, and $9,245.16 for the telephone overcharges of $6,163.44. The releases given by O.P.A. declared that the rent payment was for overcharges during the period July 1, 1944, to February 2, 1945, and that the telephone payment was for overcharges from July 1, 1944, to April 1, 1945. Each release stated that it was "* * * limited to the transactions described above, and all rights of the Administrator and *64 of any other person, whether named in this release or not, with respect to any other transaction are expressly reserved." In filing its tax returns for the fiscal year ended March 31, 1946, petitioner included $14,129.44 (which sum represented the single overcharges) as a deduction, thereby reducing its net taxable income by that amount. Respondent disallowed the deduction. In its petition, the taxpayer claimed as a deduction the full amount paid in settlement of the O.P.A. suit. Opinion The amount paid to the United States as the result of a claim by the O.P.A. under section 205(e) of the Emergency Price Control Act, as amended, is an allowable deduction of an ordinary and necessary business expense within the purview of section 23(a)(1)(A), I.R.C., if the violation was neither wilful nor the result of failure to take practicable precautions to prevent its occurrence; Jerry Rossman Corp. v. Commissioner, 175 Fed. (2d) 711; National Brass Works v. Commissioner, 182 Fed. (2d) 526; Pacific Mills v. Commissioner, 17 T.C. 705, affd. 207 Fed. (2d) 177; Rev. Rul. 54-204, 1954-23 I.R.B. p. 6; or, *65 where the overcharge is insignificant in amount, inadvertent and unintentional, and voluntarily disclosed; Farmers Creamery Co. of Fredericksburg, Va., 14 T.C. 879; cf. Henry Watterson Hotel Co., 15 T.C. 902, 905, affd. 194 Fed. (2d) 539. The deduction has been disallowed where the taxpayer has failed to prove that the overcharges were unwittingly and innocently made or that adequate care was taken to avoid the violation. Joseph Salzman, 21 T.C. 777; National Brass Works, 16 T.C. 1051, affd. 205 Fed. (2d) 104; Henry Watterson Hotel Co., supra; Garibaldi & Cuneo, 9 T.C. 446. "* * * the sum paid to the government may be allowed as a business deduction when the overcharge has been innocently and unintentionally made and not made through an unreasonable lack of care. The whole question resolves itself into proof with the burden on the claimant. * * * "No payment to the Administrator made for overcharges in circumstances incompatible with innocence or with reasonable care can be a necessary and ordinary expense. Allowance of the deduction in either of these situations would definitely *66 tend to frustrate enforcement of the Price Control Act." National Brass Works v. Commissioner, 182 Fed. (2d) 526, 529-530. We do not think petitioner has met its burden of proof. Upon the evidence received at the hearing we have been unable to find as an ultimate fact that the violations of the Price Control Act were unintentional, inadvertent, or that adequate care was taken to prevent their occurrence. Petitioner undertook to establish that the violations were unintentional and inadvertent by testimony to the effect that following a conference with certain officials of the O.P.A. in 1942 it filed a Registration Statement based on its standard "room rack rates" instead of the special rates, its contention apparently being that rental charges made in conformity therewith would not have constituted intentional or wilful violations of the Emergency Price Control Act. It is noted that a similar contention was made by petitioner as a separate defense in its answer filed in the suit for treble damages filed by the O.P.A. Administrator, notwithstanding which that action was settled by the payment of one and one-half times the amount of the alleged overcharges. The evidence *67 does not clearly establish that a Registration Statement based on its standard "room rack rates" was actually filed. No original or copy of such a statement was offered in evidence, and, none of the witnesses, including the assistant hotel manager who participated in the conference, the auditor and the treasurer whose duties included governmental agency matters, prepared or filed such a statement themselves or knew for certain that one had been filed. Assuming, however, that such a statement had been filed prior to September 1942, there is no evidence whatever that the overcharges made by petitioner during the period involved, which formed the basis for the O.P.A. suit, conformed to the "room rack rates" claimed to have been set forth in such statement. The only testimony relating to this matter was that of the former assistant manager who testified that after the meeting with the O.P.A. official and the filing of the statement the room rates charged by the Senator Hotel "generally speaking" were its standard "room rack rates." He, however, was in the military service from May 29, 1943, to January 6, 1946, and had no knowledge of the charges made during the period involved. Counsel *68 for petitioner orally stipulated at the hearing that "during the time of the O.P.A. price ceiling regulations, during the applicable time, there were some overcharges made by the hotel in both room rates and telephone charges." The mere filing of a registration statement is not sufficient to establish that the overcharges were unintentional or inadvertent or that practicable precautions were taken to prevent their occurrence. The petitioner urges that its immediate compliance with the regulations after the suit was filed is probative of its innocence in overcharging. We disagree. That fact is as consistent with petitioner removing itself from an unfavorable position as it is of its innocence. Cf. National Brass Works v. Commissioner, 16 T.C. 1051, affd. 205 Fed. (2d) 104. Also, approval of the petition for increased rates in 1945 is no more an administrative determination of petitioner's innocence than was the settlement of the suit. Cf. George Schaefer & Sons, Inc. v. Commissioner, 209 Fed. (2d) 440. The petitioner claims that it was an innocent violator because it was confused by the complexity of the Act. There is no proof of confusion *69 of the petitioner with the applicable regulations. Cf. National Brass Works v. Commissioner, 16 T.C. 1051, affd. 205 Fed. (2d) 104; Garibaldi & Cuneo, supra. In fact the Rent Regulations for Hotels are set out in clear and understandable terms (8 Fed. Reg. 7334). They contain none of the complexities referred to in Jerry Rossman v. Commissioner, supra, and in National Brass Works v. Commissioner, 182 Fed. (2d) 526. The petitioner further argues that the testimony of its "witnesses * * * clearly proves that what was paid constituted single the amounts of overcharges claimed by the O.P.A. for the periods shown on the release * * * and additional amounts in lieu of such overcharges as there may have been prior to July 1, 1944" and thus it ought to be able to deduct the single overcharges as an innocent violation and the additional amount as a voluntary payment (which was an allowable deduction under I.T. 3630, 1943 C.B. 113; cf. I.T. 3627, 1943 C.B. 111). We do not agree. The releases specify that they were given for the settlement of rent overcharges for the period July 1, 1944, to *70 February 2, 1945, and for telephone overcharges from July 1, 1944, to April 1, 1945. In addition the former Chief of the Sacramento Rent Enforcement Unit, who negotiated the settlement on behalf of O.P.A., testified that no other periods were involved. Lastly, the petitioner contends that the overcharges were insignificant in amount and therefore deductible under the Farmers Creamery Co. case, supra. In that case the taxpayer had inadvertently charged one cent per quart in excess of the ceiling price for a chocolate drink by misunderstanding the rules. When the violations were discovered the president of the Creamery Company voluntarily reported the overcharge to the O.P.A. The instant case is clearly distinguishable. Here there is no proof that the overcharge was inadvertent or that the regulations were misunderstood. Furthermore the violations were not voluntarily disclosed. Cf. Henry Watterson Hotel Co., supra, at p. 905. Having carefully reviewed all the evidence we hold that the petitioner has failed to prove that its violations of the Emergency Price Control Act, as amended, were unintentional or were not the result of failure to use reasonable care to comply *71 with the law. Consequently, it is not entitled to deduct the amounts paid in settlement of the suit as an ordinary and necessary business expense within the meaning of section 23(a)(1)(A), I.R.C.
Decision will be entered for the respondent. Footnotes
1. Section 205(e). Emergency Price Control Act of 1942 (56 Stat. 23, 34), as Amended by Section 108(b) of Stabilization Extension Act of 1944, Enacted June 30, 1944, ( 58 Stat. 632, 640). (e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine; Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word "overcharge" shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered.↩