T.C. Memo. 1998-451


UNITED STATES TAX COURT


STEVEN AND JENNIE JACOBS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15664-95.              Filed December 23, 1998.


Steven and Jennie Jacobs, pro sese.

<u>Milton B. Blouke</u>, for respondent.


MEMORANDUM OPINION


BEGHE, <u>Judge</u>:  Respondent determined a deficiency of $12,930 in petitioners' 1992 Federal income tax.  In so doing, respondent disallowed for lack of substantiation all deductions claimed by petitioners as expenses of the advertising business carried on by petitioner Steven Jacobs (petitioner), as sole proprietor, under

the name of "Jacobs Creative Group". Those deductions claimed by petitioners, in the amount of $40,612, exceeded the gross income of $21,876 reported on Schedule C as the income of Jacobs Creative Group, which respondent did not dispute, and reduced the taxable income from the salary of petitioner Jennie Jacobs (Ms. Jacobs) reported on their joint return.

After making some findings of fact of general application, reciting the procedural history of the case, and providing an introductory exposition of applicable law, we shall, for convenience, combine our findings, discussion and holding under a separate heading for each type of expense in issue.

Petitioners timely filed an electronic joint return for 1992. At the time petitioners filed their petition, they resided in Reno, Nevada. Petitioners were divorced in 1996.

The case was continued from the Court's May 20, 1996, and May 4, 1997, Reno, Nevada, general trial sessions on petitioners' motions on the ground of petitioner's asserted inability to prepare for trial by reason of "Chronic Fatigue Immune Dysfunction Syndrome (CFIDS)" and a spinal injury.

In due course, the case was placed on the Court's May 4, 1998, Reno, Nevada, general trial session. During the week immediately preceding the session, in response to petitioner's telephone message that he wished to request another continuance, the Court informed petitioner and respondent that no more

continuances would be granted. Petitioner and respondent thereupon entered into a bare bones stipulation of facts, agreeing only that petitioners resided in Reno, with attached hard copy of petitioners' return and copy of the statutory notice of deficiency. The only documentation that was presented by petitioner and admitted into evidence at trial were examples of brochures and other printed materials that petitioner produced for clients of his advertising business during the taxable year. Petitioner asserted over the years prior to trial and at trial that he had documentary evidence to support the claimed deductions. Although a day or two before trial petitioner had finally obtained from storage the boxes in which--he told respondent and the Court--his records were located, at trial petitioner produced no profit and loss statements, no journals or ledgers reflecting income and expenses, and no invoices, receipts, or canceled checks documenting payments to vendors of goods or services received by his business during the taxable year. Nor did petitioner produce and submit any such documentary evidence to respondent for inclusion in a supplemental stipulation of facts during the 30-day period following the trial that the record was held open to allow him to do so.

The Court set a seriatim briefing schedule, with respondent to file the first brief. On August 10, 1998, following enactment of the IRS Restructuring and Reform Act of 1998, Pub. L. 105-206,

112 Stat. 685, ___, respondent and Ms. Jacobs filed a stipulation of settled issues, agreeing that Ms. Jacobs "is entitled to relief from liability under the innocent spouse provisions of I.R.C. § 6015 for the 1992 taxable year."

On November 16, 1998, following the filing of respondent's opening brief, petitioner filed a motion to dismiss on the ground that his ailments were preventing him from preparing and filing a reply brief, and that "if the Court would see fit to grant a dismissal it would be an act of mercy for which [petitioner] would be eternally grateful".  The Court denied petitioner's motion in an order explaining that under the Court's Rule 123[1] the granting of petitioner's motion would require entry of a decision in favor of respondent.  The order informed the parties that the case was fully submitted and excused them from filing any additional briefs.

Petitioner had an advertising business, creating story boards for radio and TV advertisements and placing those advertisements, and creating layouts for print brochures and folios.  On Schedule C, petitioner reported gross income from the business of $21,876, which was allocated (rounded off) as follows:

---

[1] Unless otherwise stated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the taxable year in issue.

|                        |          |
|------------------------|---------:|
| Radio & TV ads         | $15,000  |
| Brochures & folios     | 3,500    |
| Other print ads        | 3,000    |
| Total                  | 21,500   |

The $40,612 of expenses claimed by petitioner on Schedule C and disallowed by respondent was as follows:

| | | |
|---|---------------------------------------------------|--------:|
| 1. | Advertising                                      | $2,500  |
| 2. | Bad debt                                         | 1,700   |
| 3. | Car and truck                                    | 8,400   |
| 4. | Legal and professional                           | 3,342   |
| 5. | Office                                            | 6,360   |
| 6. | Travel                                           | 1,829   |
| 7. | Entertainment<br>($942 - $188 (20 percent) = $754) | 754     |
| 8. | Publications                                     | 427     |
| 9. | Printing                                         | 15,300  |
|    | Total                                            | 40,612  |

Respondent's determination in the notice of deficiency is presumed correct, and petitioner bears the burden of proving that it is incorrect.  Rule 142(a).

Section 162 allows a deduction for ordinary and necessary business expenses.  Whether an expense is deductible under section 162 is ultimately a question of fact.  Commissioner v.

Heininger, 320 U.S. 467, 475 (1943). An expense is ordinary under section 162 if it bears a reasonably proximate relationship to the operation of the taxpayer's business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940); Gill v. Commissioner, T.C. Memo. 1994-92, affd. without published opinion 76 F.3d 378 (6th Cir. 1996). An expense is necessary if it is helpful and appropriate in promoting and maintaining the taxpayer's business. Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985).

Taxpayers must substantiate amounts claimed as deductions by maintaining the records necessary to establish their entitlement thereto. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Where a taxpayer establishes his entitlement to a deduction, but does not establish the amount because of the lack of documentary evidence, the Tax Court should estimate the amount allowable, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), provided there is enough evidence in the record to provide a rational basis for an estimate, Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

In Cohan v. Commissioner, supra at 543, the Court of Appeals for the Second Circuit recognized that the expenses of an impresario in entertaining actors and crew members were

legitimate and deductible.  The taxpayer, however, did not produce any of the receipts substantiating such expenses.  The Court of Appeals directed the Board of Tax Appeals to estimate such expenses "bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making".  Id. at 544.

Section 274(d) overrides the Cohan doctrine with respect to expenses of travel away from home (including meals and lodging) and entertainment.  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Under section 274(d), a taxpayer must substantiate the amount, time, place, and business purpose of the expenditures and furnish adequate records or sufficient evidence corroborating his own statement.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Adequate records are defined as an account book, diary, log, statement of expense, trip sheets, or similar records, plus "documentary evidence".  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Examples of documentary evidence include receipts, paid bills, or similar evidence to support an expenditure, except that, with respect to any expenditure of less than $25 incurred prior to October 1, 1995, or transportation charges "documentary evidence will not be required if not readily available, provided, however, that the Commissioner in his

discretion may prescribe rules waiving such requirements in circumstances where he determines it is impracticable for such documentary evidence to be required." Sec. 1.274-5T(c)(2)(iii) (B), Temporary Income Tax Regs., 62 Fed. Reg. 13990 (Mar. 25, 1997).

"Listed property", the use of which for transportation purposes must meet the substantiation requirements of section 274(d)(4), includes passenger automobiles and trucks. Sec. 280F(d)(4)(A)(i) and (ii); sec. 1.280F-6T(b)(2)(i), Temporary Income Tax Regs., 49 Fed. Reg. 42713 (Oct. 24, 1984). However, section 1.274(d)-1, Income Tax Regs., authorizes the Commissioner to prescribe rules for mileage allowances for ordinary and necessary expenses for local transportation, see Dehr v. Commissioner, T.C. Memo. 1998-441, and such rules were prescribed for the year 1992. See Rev. Proc. 91-67, 1991-2 C.B. 887.

1. Advertising Expense of $2,500

Petitioner claimed and testified that he paid a total of $2,500 in cash for advertising his advertising business at the rate of $100 per ad in two local publications published monthly by Matson Publications, "Nevada Today" and "Nevada Woman". Petitioner provided no invoices, no copies of the ads, and no other witness who established that the ads were placed. Subsequent to trial, he failed to produce copies of the ads, either from his retained boxes of records, or from the Reno

Public Library's copies of the publications in which the ads appeared. Nevertheless, the Court is satisfied from petitioner's testimony that he incurred advertising expenses of this type. Applying Cohan v. Commissioner, supra, and "bearing heavily" on petitioner, we allow an advertising expense deduction of $1,200.

2. Bad Debt of $1,700

Under section 166, a deduction is allowed for a debt which becomes worthless during the taxable year. Petitioner claimed a bad debt deduction of $1,700 by reason of the failure of Roger Wright, for whom he prepared brochures detailing Mr. Wright's expertise in tracing horse bloodlines, to pay petitioner's agreed-upon fee of $1,700 for preparing the brochures. The unpaid fee for preparing the brochures, like wages or salary, would have been ordinary income to petitioner upon payment; petitioner did not report as income, for 1992 or any prior year, any of the fee alleged to be owed.

Under applicable law, the unpaid fee is not deductible as a bad debt. Sec. 1.166-1(e), Income Tax Regs. provides:

> Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year.

Inasmuch as petitioner did not report the fee income, he is not entitled to a bad debt deduction for the unpaid fee for 1992.

<u>Koenig v. Commissioner</u>, T.C. Memo. 1998-215; sec. 1.166-1(e), Income Tax Regs.

Even if we had determined that petitioner had included the unpaid fee in income, he has failed to establish that the debt was worthless at the end of the taxable year in issue. Petitioner testified that in 1998 he was still attempting to collect the debt.

3.   <u>Car and Truck Expenses of $8,400</u>

Petitioner claimed car and truck expenses of $8,400, which respondent disallowed in full in the statutory notice.  However, respondent conceded on brief that "petitioner * * * should be allowed a mileage expense deduction for his trips to Virginia City."

Petitioner testified that he traveled to meet his production assistant, who was located in Virginia City, about 40 miles away from Reno, and that he did this on an average of three or four times a week.  Petitioner also testified that he had records of his other expenses that made up the total of $8,400, but he failed to produce them at trial or subsequently, while the record was held open.  Respondent has made no concession with respect to any other claimed expenses in this category.

Relying on respondent's concession as a waiver under sec. 1.274-5T(c)(2)(iii)(B), Temporary Income Tax Regs., 62 Fed. Reg. 13990 (Mar. 25, 1997) and Rev. Proc. 91-67, 1991-2 C.B. 887,

we find that petitioner made trips to Virginia City on an average of three times per week during 20 weeks during the year, for a total of 4,800 miles. At the standard business mileage rate of 28 cents per mile in effect for 1992 under Rev. Proc. 91-67, supra, petitioner is entitled to a mileage allowance deduction for local travel of $22.40 per day, or a total of $1,344. We sustain the balance of respondent's disallowance of petitioner's claimed car and truck expense deduction.

4. Legal and Professional Expenses of $3,342

Petitioner testified that "primarily" the $3,342 was paid for production costs and that a "small amount" was for legal expenses. Petitioner testified that the production costs included both amounts paid to the production assistant in Virginia City and amounts paid to sound engineers. Petitioner testified that he worked with the production assistant to determine a budget and how much of the fee petitioner would keep and how much the production assistant would keep. However, petitioner presented no invoices or other documentation showing how the services of the production assistant were billed and paid for. Although petitioner testified that he reported the gross amounts paid under the contracts, it is not clear--indeed it seems unlikely--that the production assistant's share was part of the gross income reported by petitioner. We do not believe that

petitioner included the amounts paid to the production assistant in the $21,876 of income reported on Schedule C.

Nor are we inclined to give petitioner the benefit of the doubt--much less consider that he has carried his burden of proof--that any part of the amount claimed was paid for services provided by sound engineers. Petitioner admitted that he usually paid for such services in cash because he was thereby able to obtain discounts from market rates charged by service providers who were moonlighting after hours from their regular jobs. We are sufficiently familiar with the operations of the underground economy to say that a taxpayer who makes payments in cash to facilitate income tax underreporting and unauthorized use of employer facilities by employee service providers does not thereby convince us, without documentation, that he has incurred and paid deductible expenses.

With respect to the legal fee portion of petitioners' claim, petitioner failed to provide the Court with sufficient information to determine if the legal expenses claimed were related to the business or were personal in nature. Petitioner testified that the legal fees were partly for a bankruptcy that he had filed in the previous year and for the attorney to review "contracts".

Respondent's determination on this issue is sustained in full.

## 5.  Office Expenses of $6,360

The office expenses listed on the 1992 Schedule C allegedly consisted of payments to Washoe Association for Retarded Children, for which petitioner had previously worked as an employee, of $5,000 for graphics equipment[2] and $1,360 for office supplies.  The $5,000 allegedly consisted of a $2,500 lump-sum payment in cash that petitioner made to the Association and a $2,500 credit in exchange for his services.  Petitioner testified that he did not include in income the $2,500 credit for services performed.  This was a barter exchange; failing to include the $2,500 credit in income prevents petitioner from obtaining a tax basis in the property received and therefore disentitles him to a deduction for the value of his services or the cost of the property received.  See Barter v. Commissioner, T.C. Memo. 1990-142; Salon v. Commissioner, T.C. Memo. 1980-77.

We find petitioner's testimony to be generally credible with respect to his cash payments for the equipment and supplies.  We allow a deduction of $3,860 for the purchase of equipment and supplies.

## 6.  Travel Expenses of $1,829

Petitioner has completely failed to meet the recordkeeping and substantiation requirements of section 274(d) for the claimed

---

[2] Respondent did not determine or argue that any payments that petitioner persuaded the Court he had made should be capitalized and deducted under sec. 167 or sec. 168.

deduction of $1,829 for travel expenses.  Petitioner provided no evidence at the trial; he was given additional time after the trial to provide documentary evidence and he failed to do so. Respondent's determination on this issue is sustained in full.

7.  <u>Meals and Entertainment Expenses of $942, Less the 20 Percent Limitation ($188) for a Deduction of $754</u>

Petitioner has completely failed to meet the recordkeeping and substantiation requirements of section 274(d) for meals and entertainment expenses.  Petitioner presented no evidence at the trial; he was given additional time after the trial to provide documentary evidence and he failed to do so.  Respondent's determination on this issue is sustained in full.

8.  <u>Publications Expenses of $427</u>

Petitioner purchased nonbusiness publications (Esquire, Vanity Fair, Details) without providing any persuasive evidence of business use.  Petitioner failed to provide any substantiation of his publications expense in the amount of $427, even though he was given additional time after the trial to provide documentary evidence.  Respondent's determination on this issue is sustained in full.

9.  <u>Printing Expenses of $15,300</u>

Petitioner's total Schedule C reported gross income amounted to $21,876, of which only $3,500 was attributable to the creative fees charged for the brochures and folios that he produced for real estate brokers.

Petitioner testified that the $15,300 claimed as a deduction for printing expenses was based upon the following costs of producing the brochures and folios for the real estate brokers:

| Petitioners' Exhibit | Creative Fees | Production Costs | Total Cost |
|---|---|---|---|
| 5 | $1,500 | $4,184.77 | $5,684.77 |
| 6 | 500 | 2,201.07 | 2,701.07 |
| 7 | 500 | 3,427.10 | 3,927.10 |
| 8 | 500 | 3,427.10 | 3,927.10 |
| 9 | 500 | 2,201.07 | 2,701.07 |
| Exhibit totals | 3,500 | 15,441.11 | 18,941.11 |

Examples of the brochures and folios, with an attached statement of the production cost of each, were introduced into evidence. Attached to Exhibit 5 was an invoice to the client for photography and printing costs reciting that a partial payment had already been received.

Petitioner has not persuaded us that he included in his gross income any amounts corresponding to the $15,300 or more he allegedly paid to printers and photographers. He claimed to have the evidence but failed to provide it to the Court. We are satisfied that the payments were made directly by the clients to the printers or that, if petitioner acted as a conduit for the payments, he did not include them in gross income. In either case, he is not entitled to a deduction for them. It defies credibility that petitioner would enter arrangements that would

obligate him to incur and pay production costs more than four times his $3,500 in fees without reimbursement by the clients.

Respondent's determination on this issue is sustained in full.

To give effect to our partial allowance of some deductions claimed by petitioner on his 1992 Schedule C for Jacobs Creative Group,

<u>Decision will be entered</u>

<u>under Rule 155</u>.