Standard Galvanizing Co., (of Illinois) v. Commissioner.
Standard Galvanizing Co. v. Commissioner
Docket No. 24015.
United States Tax Court
1952 Tax Ct. Memo LEXIS 314; 11 T.C.M. (CCH) 170; T.C.M. (RIA) 52048; February 25, 1952
*314 Petitioner is entitled to deduct in the taxable year 1944, as ordinary and necessary business expense, attorney's fees paid for services rendered in connection with an equity suit involving shares of petitioner's capital stock, where such stock was pledged by its president and majority stockholder at the request of petitioner in order to obtain loans which were used in the operation of its business. Rayford W. Lemley, Esq., for the petitioner. David F. Long, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: The respondent determined deficiencies in excess profits tax against petitioner for the years 1943 and 1944 in the respective amounts of $8,154.39 and $19,256.14. The parties have agreed upon the correct amount *315 of the tax deficiency for 1943, which will be effectuated under Rule 50. The only contested issue with respect to the year 1944 is whether petitioner is entitled to a deduction of the amount of $21,500, legal fees, as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code, under the circumstances hereinafter set forth. All the facts have been stipulated and are so found. Petitioner is an Illinois corporation organized in 1913 for the purpose of engaging in the galvanizing business in Chicago, Illinois. It filed its income and excess profits tax returns for the years 1943 and 1944 with the collector of internal revenue for the first district of Illinois. Its books were kept on an accrual basis at all times material to this proceeding. The original capitalization of petitioner was $35,000, which was increased to $70,000 about November 29, 1922, represented by 700 shares of common stock of the par value of $100. The increase was brought about by a stock dividend. During the entire period from its incorporation through the taxable years involved, Frederick C. Brightly, Sr. was its president. Petitioner paid no *316 dividends of any kind during the years 1935 to 1944, inclusive. During the years 1935 to 1944, inclusive, B. S. Handwork was vice-president of the Joslyn Mfg. and Supply Co., and during those years received no compensation from petitioner. On November 22, 1935, B. S. Handwork and Frederick C. Brightly, Sr. entered into a written agreement in which they were referred to as the "First Party" and "Second Party", respectively. This agreement contains, inter alia, the following provisions: "WHEREAS, the Second Party owns and controls more than two-thirds of the shares of the capital stock of said Corporation; and "WHEREAS, the First Party is willing to furnish money to the Corporation for the purpose of paying and making settlement with its creditors, and also money for use as additional working capital, upon the terms, conditions and provisions, as hereinafter set forth. "NOW, THEREFORE, in consideration of the premises and of the mutual promises and covenants of the respective parties hereto herein contained, IT IS AGREED AS FOLLOWS; "1. The First Party agrees to loan to the Corporation sufficient money to satisfy all of its unsecured creditors in full to whom said Corporation *317 may owe less than One Hundred Dollars ($100.00), and to satisfy all creditors in full to whom said Corporation may owe One Hundred Dollars ($100.00) or more by the payment of fifty cents ($0.50) on the dollar of said indebtedness. "2. The First Party further agrees to acquire the real estate mortgage of the Corporation in the sum of Ten Thousand Dollars ($10,000.00) now outstanding against a portion of the plant of said Corporation, and will cause the same to be released. "3. The First Party further agrees to loan to the Corporation from time to time money within reasonable amounts to be used by the Corporation as working capital. "4. The Second Party will cause to be transferred and delivered to the First Party, or his nominees, two-thirds of the outstanding shares of the capital stock of said Corporation, being four hundred sixty-seven (467) shares. "5. In order to secure the moneys loaned by the first party to the Corporation, the second party agrees to cause the Corporation, through proper corporate action, to authorize, make and deliver to the First Party the following instruments: "(a) Mortgage or Trust Deed covering all the land and improvements, with appurtenances *318 thereto belonging, owned by the said Corporation at 2619 West Van Buren Street, Chicago, Cook County, Illinois, to secure its five-year coupon note to the First Party, or his nominees, for Ten Thousand Dollars ($10,000.00), with interest at the rate of six per cent (6%) per annum, payable semi-annually, in lieu of the present outstanding mortgage for Ten Thousand Dollars ($10,000.00); "(b) Chattel Mortgage or Trust Indenture covering all of its tool, machinery and equipment, office furniture and fixtures, to secure its three-year coupon note to the First Party, or his nominee, with interest at the rate of six per cent (6%) per annum, payable semi-annually, for such sum as may be required to pay off and satisfy the creditors of the Corporation; "(c) To execute its promissory notes to the First Party, or his nominee, from time to time for such sums as the Corporation may procure from the First Party, to be used as working capital in the carrying on of its business. "5. [sic] The Second Party and Fred C. Brightly, Jr., and A. D. Mcfarlane, shall remain in their present positions with the Corporation, and with their present compensation, until the same is changed by proper corporate *319 action." A supplemental agreement dated November 22, 1935, was transmitted to Frederick C. Brightly, Sr. on January 16, 1936, by the Joslyn Mfg. and Supply Co. This supplemental agreement was executed by Frederick C. Brightly, Sr. and B. S. Handwork, and contained the following provisions: "Supplementary to the above agreement but as a vital part thereof, and in consideration of the settlements with creditors as provided for therein, Mr. Frederick C. Brightly agrees to assign, and does hereby assign to B. S. Handwork, a note, dated October 31, 1935, and signed by the Standard Galvanizing Company and running to said Frederick C. Brightly, in the sum of Sixteen Thousand five hundred and sixty dollars ($16,560.00), with the understanding that the enforcible amount of this note is immediately reduced to the same basis of settlement which is to be made with all creditors, namely fifty percent (50%) of its face value, that is Eight thousand two hundred and eighty dollars ($8,280.00). "It is further agreed that if on March 1, 1936, all other creditors of the Standard Galvanizing Company, as of the 22nd day of November 1935, have been settled with as provided in the agreement, then this *320 remaining obligation of the Standard Galvanizing Company of Eight thousand two hundred eighty dollars ($8,280.00) shall, as of March 1, 1936, be entirely cancelled." On November 22, 1935, a special meeting of the board of directors of petitioner was held at the office of the petitioner in Chicago, Illinois. The minutes and resolutions adopted at this meeting read in part as follows: "The Chairman stated that the purpose for which the meeting had been called was clearly set forth in the waiver of notice; that it became necessary for the corporation to readjust its financial affairs; that B. S. Handwork had agreed to acquire the real estate mortgage of the company now outstanding and maturing shortly in the sum of Ten Thousand Dollars ($10,000.00) against a portion of the plant belonging to the corporation, and to discharge the same in consideration of the corporation making a new real estate mortgage on its entire plant for the sum of Ten Thousand Dollars ($10,000.00). The Chairman further stated that he deemed it advisable and for the best interests of the corporation to execute a new real estate mortgage covering the entire plant for a term of five years, with interest at the *321 rate of six per cent (6%) per annum, payable semiannually. "Upon motion of Mr. Charles E. Clark, seconded by Mr. Fred C. Brightly, Jr., the following resolution was thereupon adopted: "'WHEREAS, this corporation has an outstanding note of Ten Thousand Dollars ($10,000.00) secured by a mortgage on a portion of its real estate and improvements, which note matures on the 7th day of May, 1937; and "'WHEREAS, it is deemed advisable and for the best interests of this corporation to take up said note and mortgage, and in lieu thereof execute a note or notes in the aggregate principal sum of Ten Thousand Dollars ($10,000.00) secured by a mortgage on all real estate and improvements for a term of five years, "'NOW, THEREFORE, BE IT RESOLVED, that the President or a Vice-President and the Secretary be, and they are hereby authorized, empowered and instructed, for, on behalf and in the name of this corporation, to execute and deliver a note or notes of this corporation maturing five (5) years from the date thereof, with interest thereon at the rate of six per cent (6%) per annum, and to secure the same to execute, acknowledge and deliver a mortgage upon all the real estate and improvements *322 belonging to this corporation in and according to a form to be approved by the officers so executing said notes and mortgage, and the execution of said notes and mortgage shall be evidence of such approval of said officers.' "The Chairman further stated that Mr. B. S. Handwork had agreed to loan this corporation money from time to time to be used by it as working capital, and to take the corporation's notes therefor. Upon motion of Mr. Charles E. Clark, duly seconded by Mr. Fred C. Brightly, Jr., the following resolution was unanimously adopted: "'WHEREAS, Mr. B. S. Handwork is willing to loan this corporation money from time to time to be used by it as working capital, and to take the corporation's notes therefor bearing interest at the rate of six per cent (6%) per annum. "'NOW, THEREFORE, BE IT RESOLVED, that this corporation borrow money from S. B. Handwork from time to time on the note of this corporation on such terms as the President of this corporation may see fit, such notes to bear interest at the rate of six per cent (6%) per annum, to be in such form and with such maturities as the President of this corporation may see fit. "'BE IT FURTHER RESOLVED, that the President *323 or a Vice-President be, and they are hereby authorized to execute such notes for, on behalf and in the name of this corporation, at such time and for such amounts as they may see fit.'" Pursuant to the agreement of November 22, 1935, the petitioner did, on November 22, 1935, issue its stock certificate No. 101 for 467 shares to B. S. Handwork, which represented two-thirds of petitioner's authorized and issued capital stock. The 467 shares were transferred from shares previously issued to Frederick C. Brightly, Sr. This certificate, No. 101, of capital stock states that B. S. Handwork is the owner of 467 shares of $100 each of the capital stock of Standard Galvanizing Co. During the period from November 22, 1935 to August 28, 1936, the sum of $40,092.78 was loaned to the petitioner for the payment of certain creditors and for working capital, and the petitioner, by Frederick C. Brightly, Sr., its president, signed 14 separate notes aggregating $40,092.78, each of which was payable to the order of Joslyn Mfg. and Supply Co., for value received, with interest at the rate of 4 per cent. On May 3, 1937, one demand note bearing interest at the rate of 4 per cent per annum for $40,092.78 *324 was executed by petitioner to take the place of prior notes given by the petitioner under the agreement hereinbefore mentioned. This note of $40,092.78, together with interest, was paid by petitioner in installments during the period from June 28, 1937 to November 28, 1941. Other loans to the petitioner under the agreement of November 22, 1935, were as follows: March 14, 1938, in the amount of $1,000, with interest at 4 per cent per annum, which was paid August 15, 1939; June 5, 1938, in the amount of $2,000, with interest at 4 per cent per annum, which was paid on August 30, 1938; and a purchase of a $10,000 note secured by real estate mortgage on petitioner's real estate. All of the loans and the mortgage indebtedness, including interest of $12,451.88, were repaid on and prior to November 7, 1942. On December 14, 1943, B. S. Handwork assigned and transferred the certificate No. 101 for 467 shares to the following: Joslyn Mfg. and Supply Co. (463); Bently S. Handwork (1); Anthony J. Blaeser (1); Perry R. Pennington (1); and George B. Sturtz (1). On February 9, 1944, B. S. Handwork, Anthony J. Blaeser, Perry R. Pennington, George B. Sturtz and Joslyn Mfg. and Supply Co., hereafter *325 referred to as the plaintiffs, filed a complaint in the Superior Court of Cook County, at Chicago, Illinois, Case No. 44-S-1825, against petitioner (Standard Galvanizing Co.) and its officers, Frederick C. Brightly, Sr., Frederick C. Brightly, Jr., and Thomas D. Laftry, as defendants, to compel the transfer of the stock by the petitioner on its books in accordance with an assignment. Petitioner filed a separate answer, admitting certain allegations of the complaint and denying that plaintiffs were the owners and holders of these 467 shares of the stock of petitioner. No affirmative relief was prayed for. The individual defendants filed a joint answer in which they made similar admissions and denials and set forth an affirmative defense. No affirmative relief was prayed for by the individual defendants other than by defendant Frederick C. Brightly, Sr., who set forth a so-called counterclaim. In his counterclaim, Brightly named B. S. Handwork as a defendant, and prayed that B. S. Handwork be required to answer the counterclaim, and for a decree requiring him to deliver to Brightly the certificate No. 101 for 467 shares of stock of petitioner. Thereupon the plaintiffs in the foregoing *326 complaint filed a reply, an amended and second amended reply to the answer of the individual defendants. The case was referred to a Master in Chancery who, after a hearing, filed his report with the Superior Court, setting forth his findings of fact and conclusions of law. On or about February 11, 1946, the Superior Court entered a decree in such proceeding, reading in part as follows: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the report of Frank E. Shudnow, Master in Chancery, be and the same is hereby approved and confirmed. "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the complaint of the plaintiffs and their second amended reply to the answer of the defendants be and the same are hereby dismissed for want of equity. "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that B. S. Handwork assign and deliver to Frederick C. Brightly certificate No. 101 for 467 shares of stock of Standard Galvanizing Company, dated November 22, 1935, and said B. S. Handwork is hereby ordered and directed to make such delivery within 20 days from the entry of this decree." The plaintiffs appealed from the decision of the Superior Court to the Appellate Court of Illinois for the First *327 District of Illinois. On or about June 20, 1949, the Appellate Court reversed the Superior Court's decree and remanded the cause for further proceedings not inconsistent with its opinion. On December 6, 1949, the Superior Court of Cook County, Illinois, reinstated the cause, and the same is now pending in that court. On March 6, 1944, at a meeting of the shareholders of petitioner, the chairman of the meeting stated that action had been filed against the company and the officers and directors of the company in the Superior Court of Cook County involving the 467 shares of stock which had been pledged to B. S. Handwork. The minutes of the meeting disclosed the following: "Thereupon a discussion was had concerning said suit. It was pointed out by the Chairman that this litigation arose out of the contract with B. S. Handwork, dated November 22, 1935, whereby the company obtained a loan of approximately $40,000.00 conditioned upon certain shareholders pledging 467 shares of stock, and upon the corporation giving certain additional security. The Chairman further stated that the pledging of this stock was for the accommodation of the company and for its financial benefit. Dr. Laftry *328 stated that under these circumstances it appeared to him that the company was under an obligation to indemnify the shareholders who acted at the request of and for the benefit of the corporation. Thereupon after further discussion concerning said matter, and upon motion made, seconded and unanimously carried, the following resolution was adopted: "'RESOLVED that the corporation, through its officers, retain legal counsel to take any and all action which may be necessary to protect and indemnify this corporation, its officers and shareholders in Superior Court Case No. 44 S 1825 to the end that the shareholders of this corporation may be returned to the same position as they were when requested by the corporation to pledge their stock for the loan made by the corporation under said contract of November 22, 1935.'" In its income tax return for the taxable year 1944, petitioner claimed a deduction of the sum of $24,641.75 for legal and professional expenses. In determining the deficiency for 1944 the respondent disallowed the sum of $21,500 as "legal expenses," with the following explanation: "It is held that the litigation expenses incurred and paid during the taxable year 1944 *329 in conection with the suit of B. S. Handwork, et al., v. Standard Galvanizing Company, et al., did not constitute an ordinary and necessary expense of the corporation in carrying on any trade or business, under section 23 (a) (1) of the Internal Revenue Code." Of the $24,641.75 claimed for legal and professional expenses, only $21,500 was claimed as legal expenses in connection with the aforementioned Chancery suit, and constitutes the entire amount of litigation expenses claimed as a deduction. The remaining amount of $3,141.75, allowed by respondent, had no connection with such litigation. The $21,500 does not include claimed deductions for litigation expenses, if any, subsequent to the year ended December 31, 1944. No litigation expenses were billed to or paid by Frederick C. Brightly, Sr., Frederick C. Brightly, Jr., or Thomas D. Laftry, the individual defendants in such Chancery suit. The legal fees in the amount of $21,500 paid in the taxable year 1944 in connection with a Chancery suit constitute ordinary and necessary business expenses of the petitioner. The sole question is factual. Cf. Commissioner v. Heininger, 320 U.S. 467. It is *330 whether petitioner is entitled to deduct all or any part of the sum of $21,500 in 1944 as legal fees incurred and paid under the circumstances set forth in our findings of fact, as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code. Petitioner contends that the issue presented is not the ownership of the shares of its stock, as claimed by the respondent, but whether petitioner, having requested its president and majority stockholder to obtain loans for its benefit, and the stockholder having been required to pledge certain of his shares of the stock of petitioner in order to obtain such loans, petitioner was legally obligated to protect such stockholder. Petitioner argues that obtaining loans in order to carry on its operations is a proper and ordinary corporate function and, having procured such loans and having the benefit thereof, the defense of litigation arising out of the procurement of such loans was proximately related to carrying on its business. The facts have been stipulated. In support of its contention, petitioner directs attention to the resolution of its board of directors adopted at a meeting *331 held November 22, 1935, wherein the president was authorized to borrow money on "such terms as the president of this corporation may see fit * * *," and to the resolution of the stockholders at a meeting held March 6, 1944, authorizing the officers to retain legal counsel to take all action which might be necesary to protect and idemnify the corporation, its officers and stockholders in the equity suit "to the end that the shareholders of this corporation may be returned to the same position as they were when requested by the corporation t6 pledge their stock for the loan made by the corporation under said contract of November 22, 1935." The respondent's action in disallowing as a deduction the entire amount of $21,500 paid in legal fees is manifestly in error. Petitioner was a party defendant to the suit and the employment of legal counsel to represent it and protect its rights was called for, and such part of the total fee as represented such service was clearly an ordinary and necessary business expense deductible under section 23 (a) (1) (A) of the Code. Kornhauser v. United States, 276 U.S. 145, Commissioner v. Heininger, supra. The question is to determine, *332 if possible, how much of the total expenditure was for services to petitioner. Upon careful consideration of the minute entry and resolution of March 6, 1944, set out in the findings of fact, it appears that it may as reasonably be construed as the admission of a moral obligation as one of a binding legal obligation. There is no indication of an agreement of guaranty on the part of petitioner to its president. On the other hand, we do not see, under the existing facts, that petitioner stood in the position of one without personal business interest in the result of the litigation and, consequently, under obligation to do no more than file a formal reply interpleading the other parties and submitting to the court the question of determining the question of ownership of the stock as between such parties. The reason for the conveyance of this stock by Brightly was to secure the loan to petitioner of which it was in sore need. Brightly had been given full authority by petitioner to use his own discretion in procuring the loan and his acts were as its agent and in its interest. The petitioner's officers and stockholders were aware of the action being taken. Under such circumstances, *333 we think the petitioner could reasonably anticipate that it would be faced with suit by Brightly if it took the position that it had no personal interest in the result of the litigation, and such suit might well be quite expensive, even if successfully defended. However, the litigation as to ownership of the stock was due in large measure directly to the negligence of Brightly in failing to include in the agreement under which the stock was conveyed a statement specifically noting it as a conveyance of a pledge to be returned if and when the loan was repaid. Even if petitioner had guaranteed Brightly it could not be said that such guaranty was one against the result of his own personal negligence. Under these circumstances, we think the situation is one calling for an allocation, under the rule of Cohan v. Commissioner, 39 Fed. (2d) 540 [2 USTC [*] 489], of the total expense as between services rendered petitioner in its own interest and those representing services rendered in fact for Brightly but assumed by the petitioner as more in the nature of a moral obligation. Under such an allocation, as petitioner is the one carrying the burden of establishing the deduction, *334 it must bear the heavier burden. We conclude and hold that the sum of $21,500 paid by petitioner as legal fees, the sum of $5,000 represented payment for services rendered it in the protection of its own interests, and only to such extent does the total payment represent a proper deduction in arriving at net income. Effect will be given to the facts stipulated relative to the taxable year 1943. Decision will be entered under Rule 50.