Estate of Albert E. MacCrowe, Deceased, James C. L. Anderson, Administrator, de bonis non, with the will annexed, and Hazel B. MacCrowe (now Hazel B. Keen), Surviving Wife v. Commissioner.
Estate of MacCrowe v. Commissioner
Docket No. 50146.
United States Tax Court
T.C. Memo 1955-238; 1955 Tax Ct. Memo LEXIS 100; 14 T.C.M. (CCH) 958; T.C.M. (RIA) 55238; August 26, 1955
D. Sylvan Friedman, Esq., for the petitioners. William Schwerdtfeger, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined deficiencies in income tax and negligence penalties under section 293(a), I.R.C. of 1939, as follows: Year
Deficiency
Penalty
1948
$95,503.26
$4,902.74
1949
36,163.86
1,808.19
The first issue is whether respondent correctly determined decedent's gross receipts from his medical practice in 1948 and 1949. The second is whether a claimed deduction for legal expenses in 1949 is proper. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Dr. Albert E. MacCrowe, a former resident of Baltimore County, Maryland, died October 29, 1950. His *101 surviving wife, Hazel B. MacCrowe (now Hazel B. Keen), resides in Baltimore County, Maryland. Joint income tax returns for 1948 and 1949 were filed with the collector of internal revenue for the district of Maryland. Decedent specialized in gynecology and during 1948 and 1949 he was primarily engaged in performing abortions or curettements. Decedent performed these operations at three different houses in Baltimore City. In 1948 one house was managed by decedent's secretary-receptionist and had 7 or 8 beds available for patients; in that year he also used a second with 12 or 13 beds. In 1949 he used a third which had 7 or 8 beds available; this place was operated by decedent's chauffeur-male nurse, who was also the son of the secretary-receptionist. In general, patients were received at night and were operated on the following morning. Ordinarily, they were discharged the following day. Most of decedent's patients paid $400 an operation. However, a few regular patients received a special price of $350, while some of his wealthy patients paid $500 for his services. All payments were made in cash before the operation. In October 1949, decedent was arrested and indicted in the *102 Criminal Court of Baltimore City on three counts: Conspiracy to commit abortion, attempt to commit abortion, and abortion. Decedent entered a plea of guilty to all three counts. The court imposed a prison sentence of 5 years but the sentence was suspended upon payment of a $5,000 fine and costs. In addition to the fine, decedent paid his attorney $7,000; $5,000 of this represented attorney fees and $2,000 was used for professional bail and expenses. Decedent claimed the $7,000 as a deductible expense on his 1949 tax return. Respondent disallowed the deduction and explained the disallowance as follows: "(b) Legal fees disallowed - $7,000.00 "Fees in the amount of $7,000.00 claimed as a deduction in the return are disallowed. The disallowance represents legal services and other incidentals in connection with a guilty plea of Dr. MacCrowe to a suit against him in Criminal Court of Baltimore as an 'abortionist', and it has not been established that the expenditure is an ordinary and necessary business expense within the provisions of Section 23(a) of the Internal Revenue Code." Decedent kept no records whereby income from his medical practice could be computed. *103 In 1948, at the instance of his attorney, decedent and his secretary attempted to compute his medical practice income. Since he had no records, he estimated that he treated 400 patients and charged each patient $125. Decedent reported to his attorney that he received $50,000 for his professional services in 1948. In 1949 he reported estimated receipts of $24,000. On June 30, 1953, the respondent sent decedent a deficiency notice for the years 1948 and 1949. Respondent adjusted decedent's gross receipts for his medical activities as follows: "(b) Unreported income - $142,000.00 Gross receipts from profession of Dr. Albert E. MacCrowe for the year 1948 are increased in the amount of $142,000.00, as computed below: Gross receipts from profession: Corrected (480 patients at
$400.00 per patient)
$192,000.00
Estimated receipts reported on
return
50,000.00
Unreported income
$142,000.00"
Similarly, the adjustment for 1949 was as follows: "a) Unreported income - $72,000.00 Gross receipts from the profession of Dr. Albert E. MacCrowe for the year 1949 are increased in the amount of $72,000.00, computed as follows: Gross Receipts from Profession: Corrected (240 patients at
$400.00 per patient)
$96,000.00
Estimated receipts reported on
return
24,000.00
Unreported income
$72,000.00"
*104 Respondent based his determination that the decedent treated 480 patients in 1948 on the number of "HMC No. 1" tablets (each tablet contains one-quarter grain of morphine) used by the decedent in his work. Respondent determined that decedent used one tablet a patient for each operation. Since 480 tablets were purchased by decedent in 1948, respondent concluded that there were 480 operations at an average of $400 an operation. The same method was used for 1949. Decedent's gross income from his medical practice was $115,000 in 1948 and $55,000 in 1949. Opinion. In this first issue respondent has increased decedent's gross receipts from his profession for 1948 and 1949. In opposition petitioners have alleged error in respondent's adjustments. These adjustments were based on a formula whereby respondent first determined the average fee the decedent charged for each operation. Respondent then determined that one morphine tablet was used in each operation, and that the number of tablets used by decedent would equal the number of operations. This number multiplied by the average charge resulted in the aggregate adjustment to decedent's gross income. In support of his determination *105 respondent produced the testimony of decedent's receptionist and chauffeur. These witnesses testified that the decedent operated on 30 to 36 patients a week in 1948 and more during the first half of 1949. They also testified that he operated during 40 weeks in 1948 and half as much in 1949. Their testimony supported respondent's determination as to the average fee of $400 an operation. If we extend the figures from this testimony, the decedent's gross income would approximate $500,000 in 1948 and half as much in 1949. These figures are almost incredible and it is significant that respondent did not use them in his deficiency determination. There has also been testimony in decedent's behalf which would indicate that decedent reported the correct income from his medical practice. Neither party has submitted a computation of income from a net worth statement; however, a certified public accountant testified in behalf of decedent that decedent's net worth in the years before us was in keeping with his reported income. We are not satisfied from the evidence before us that decedent reported his entire income from his medical practice, but petitioners have shown respondent's determination *106 to be incorrect. From the evidence and the record as a whole we have found as an ultimate fact that the gross income from decedent's medical practice was $115,000 in 1948 and $55,000 in 1949. In the second issue we must determine whether respondent properly disallowed the deduction of $7,000. Attorney fees accounted for $5,000 of this sum, and bail and other expenses made up the balance. These fees and expenses were paid as a result of a criminal indictment. Petitioners contend that the expenses were ordinary and necessary in the decedent's business. After decedent's guilty plea we can not find that the legal fees and other expenses connected with the criminal indictment were ordinary and necessary expenses incurred in the practice of medicine. The fees were not incurred in the actual production of income and did not enable the decedent to lawfully continue his activities. And if, arguendo, they are ordinary and necessary expenses in a medical practice devoted to performing abortions, it is clear that the allowance of a deduction would frustrate the sharply defined public policy and code of the State of Maryland. Therefore a deduction for these expenses can not be allowed for *107 Federal tax purposes. Commissioner v. Heininger, 320 U.S. 467; C. W. Thomas, 16 T.C. 1417. Cf. Lindsay C. Howard, 16 T.C. 157, affd. 202 Fed. (2d) 28. Decision will be entered under Rule 50.