George Schaefer & Sons, Inc. v. Commissioner.
George Schaefer & Sons v. Commissioner
Docket No. 36312.
United States Tax Court
1953 Tax Ct. Memo LEXIS 308; 12 T.C.M. (CCH) 366; T.C.M. (RIA) 53112; April 6, 1953
*308 Deductions: Business expense. - A $25,000 payment made to settle a suit brought by O.P.A. for violation of price ceilings, held, nondeductible. The petitioner's overcharges resulted from an unreasonable lack of care. Richard W. Wilson, Esq., 420 Lexington Avenue, New York, N. Y., for the petitioner. Francis J. Butler, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax against the petitioner in the amounts of $124.62 and $10,008.12 for the taxable years ended December 31, 1946 and 1947, respectively. All of the issues raised by the pleadings have been resolved by agreement save one, i.e., whether the sum of $25,000 paid by the petitioner in 1947 to the Administrator, Office of Price Administration, in settlement of a suit brought by that official against the petitioner for violation of price ceilings was deductible as a business expense. Findings of Fact The stipulated facts are so found and the stipulation incorporated herein by reference. The petitioner is a corporation organized under the laws of the State of New York. Its tax returns for 1946 and 1947 *309 were filed with the collector for the third district of New York. At all times material the petitioner was engaged in the business of selling meats and poultry at wholesale. Its business was largely with institutions, schools, colleges, hospitals, orphanages, etc. Frederick C. Thompson has been a director of the petitioner for 18 years and devoted three or four days a week to the petitioner's business. Four or five days prior to Thanksgiving 1944 the petitioner learned of a new amendment to the O.P.A. regulation governing poultry prices. The record does not disclose the source of this information, the exact nature of the amendment, or whether such an amendment was in fact issued. Thompson thereupon went to the local O.P.A. offices in New York to find out what the turkey prices were. He testified he spoke to several persons there but could not ascertain exactly what such prices were. Thompson returned to the petitioner's office and discussed the information or lack of information with other officers of the petitioner. Before taking any price action the petitioner called several wholesalers and packers from whom it purchased turkeys about prices. These people told the petitioner *310 they had increased their prices slightly and assured the petitioner it was entitled to the same proportionate increase in its prices. The petitioner raised its turkey prices accordingly. A day or two before Thanksgiving 1944, O.P.A. representatives appeared on the premises of the petitioner and asked to see the sales tickets. The petitioner furnished the O.P.A. representatives with the information requested. Based on this information the O.P.A. found that the prices charged by the petitioner were in excess of those allowed by O.P.A.
On February 23, 1945, a civil action was instituted against the petitioner in the District Court of the United States for the Southern District of New York by Chester Bowels, Administrator, Office of Price Administration, the basis of such action being certain alleged violations of Section 4 (a) of the Emergency Price Control Act of 1942, to-wit, the sales of meats and poultry at prices in excess of the Revised Maximum Price Regulations applicable thereto. It was further alleged that the aggregate amount by which the consideration on said transactions exceeded the maximum prices provided for by the Regulations equalled more than $300,000. Treble damages *311 of more than $900,000 were demanded. The petitioner, through its counsel, duly filed its appearance and answer in said action, denying each and all of the allegations of violation, and thereafter the attorneys for the plaintiff Administrator and the petitioner entered into negotiations for a settlement of the controversy. A court order terminated this action upon payment to the plaintiff the sum of $25,000. This sum, in the form of a certified check, was paid and duly delivered to the attorneys for plaintiff Administrator on October 31, 1947. In its tax return for the calendar year 1947, the petitioner claimed the item of $25,000 above referred to as a deduction representing business expenses. The respondent disallowed said deduction. The overcharges which were the reason for the payment made to settle the above described action were made as the result of an unreasonable lack of care on the part of the petitioner. Opinion The issue is now a familiar one. It has been extensively considered in the following cases: Jerry Rossman Corporation v. Commissioner, 175 Fed. (2d) 711; National Brass Works, 16 T.C. 1051; Henry Watterson Hotel Co., 15 T.C. 902 (affd. C.A. 6), 194 Fed. (2d) 539; *312 and Pacific Mills, 17 T.C. 705. A study of those decisions leads us to conclude that the question is essentially one of fact. Were the overcharges by the petitioner made wilfully or as the result of failure to take practicable precautions? Or, were the overcharges "innocently and unintentionally made and not made through an unreasonable lack of care"? In this respect the petitioner has the burden of proving the error was innocently made. National Brass Works v. Commissioner, 182 Fed. (2d) 526; Henry Watterson Hotel Co., supra. No argument is here made that the O.P.A. Regulations governing the petitioner's business were complicated or difficult to understand and no evidence to that effect was presented. The petitioner's trouble arises from the fact that it received information from an undisclosed source just before the rush of its Thanksgiving turkey business that an amendment had been made to the O.P.A. Regulations governing poultry prices. No showing was made as to the exact nature of the amendment. We do not know whether it would or would not have justified the petitioner in raising its prices. A director of the petitioner spent part of *313 a day talking to unidentified persons at the O.P.A.New York offices. He learned nothing of the effect of the amended regulation. So he made inquiry of other firms who supplied the petitioner with its poultry. These other firms assured the poultry. These other firms assured the petitioner it could safely raise its prices. Acting on no other assurances, the petitioner raised the prices of its products and with reasonable promptness was charged with a violation of O.P.A. Regulations. In his testimony, the director of the petitioner conceded there was "a violation under a strict determination of the law." In these circumstances, the petitioner contends that the overcharges were innocent because "due diligence was used, and an honest effort made to ascertain the newly amended O.P.A. prices." Some may be found who would agree with this contention. We do not. It is apparent to us that the petitioner made no more than a few hours attempt to ascertain whether increased prices would be permitted. The price increase was actually based on assurances from other poultry dealers that it would be permissible and not on information obtained from any official or authoritative source. The petitioner's *314 action was not even based on what it conceived to be a reasonable interpretation of O.P.A. Regulations. It did not know what the amended regulation provided. Faced with the prospect of failing to get the advantage of a "possibly" permissible price increase on its Thanksgiving business, it took its chances with the O.P.A., increased its prices, and was caught in the web of the price regulations. In the sense that the overcharges were made without knowledge that the new prices were actually in violation of the Regulations, we suppose it can be said that the petitioner's error was made "innocently and unintentionally." We cannot say, however, that the error was not the result of an "unreasonable lack of care" and we hold that the petitioner failed to carry the burden imposed. We approve the respondent's action in refusing to allow the claimed deduction. Decision will be entered under Rule 50.