**CAPITOL INDEMNITY INSURANCE COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11627.

United States Court of Appeals Seventh Circuit.

Oct. 26, 1956.

Albert Stump, Byron Emswiller, Indianapolis, Ind., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, John N. Stull, Acting Asst. Atty. Gen., Robert N. Anderson, A. F. Prescott, George F. Lynch, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for review of a decision of the Tax Court holding that certain payments made by petitioner to some of its stockholders pursuant to an obligation of its agent assumed by petitioner were not deductible as ordinary and necessary business expense within the meaning of Sec. 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A.

The facts upon which this decision was reached were stipulated and are substantially as follows: The petitioner, Capitol Indemnity Insurance Company (hereinafter called Capitol) is a corporation organized under the laws of the State of Indiana in November 1939, with an authorized capital stock consisting of 20,000 shares of common stock with a par value of $10 per share. In February 1941, the charter was amended and the authorized capital stock increased to 50,-000 shares of common, with a par value of $10. In July 1941, another amendment to the charter was made, authorizing capital stock at $500,000, but consisting of 500,000 shares of common stock, with a par value of $1 each. Capitol is engaged in the general insurance underwriting business, other than life, and allied investment activity, with its principal place of business at Indianapolis, Indiana. The original name of the company was Commercial Indemnity Insurance Company,

which was changed in 1943 to its present title.

When Capitol was first organized one Arthur Wyatt (hereinafter called Wyatt), who was its promoter, worked out a plan whereby he would also promote an underwriting company, to be known as Commercial Underwriters, Inc. (hereinafter called Underwriters). Capitol entered into an agreement with Wyatt, giving Wyatt an assignable contract under the terms of which he became the sole general agent for Capitol for a period of ten years. Wyatt assigned this contract to Underwriters. Under the laws of the State of Indiana, it was required that Capitol have a $200,000 capital investment before the Insurance Department of Indiana would give it a certificate to transact business. In order to acquire this necessary capital investment, Capitol sold 100,000 shares of its capital stock, with the purchasers of such stock contributing an equal amount to capital surplus. This stock was denominated Founder's Stock. As an incentive to purchase this original Founder's Stock, Underwriters entered into a stock participating agreement with its purchasers under the terms of which Underwriters agreed to repay them the full amount paid for the Founder's Stock. Under the terms of the agreement given by Capitol to Wyatt and assigned by him to Underwriters, Capitol agreed to pay to Wyatt an amount equal to 10% of its gross premiums less cancellations on all business done in the State of Indiana, and 5% of the gross premiums less cancellations received on business written outside of the State of Indiana. Other conditions and obligations contained in the agency agreement are not material to the decision here and need not be recited.

The Founders' Participating Agreement entered into by Underwriters and the purchasers of the Founder's Stock provided that Underwriters would set aside out of the compensation under the agency contract paid it by Capitol a sum equal to 2% of the premium income from the business originating in Indiana, and 1% of the premium income of the business written outside of Indiana. From the fund thus set aside from the earnings Underwriters was to pay the purchasers of the Founder's Stock a stipulated percent of the fund so accumulated during each preceding six month period until the total price of Founder's Stock was paid in full. Underwriters was unable to produce sufficient business to enable Capitol to operate profitably. Thus, it became necessary that the underwriting agreement originally entered into with Wyatt and subsequently assigned to Underwriters be cancelled. The agreement was cancelled on April 19, 1943, by a contract entered into by Capitol and Underwriters, which included in its terms the cancellation and termination of the general agency contract originally entered into with Wyatt. The terms and conditions of the cancellation and the agreement between Capitol and Underwriters were worked out by Capitol and Underwriters in conjunction with the Insurance Department of the State of Indiana and the Indiana Securities Commission. This cancellation agreement of April 19, 1943, at the insistence of the Indiana Securities Commission, provided that Capitol was to issue 10,000 shares of its $1 par value stock to Underwriters, with the condition that delivery of such shares was not to be made until it could be done without reducing taxpayer's surplus below the amount required for it to have in order for it lawfully to carry on its insurance business. The cancellation agreement further provided that Capitol assume the liability which Underwriters had incurred under its stock participating agreements with purchasers of Founder's Stock.

Capitol in its income tax returns for the taxable years 1946 through 1949 claimed as a deduction distribution made to purchasers of Founder's Stock. In the only year in question in this proceeding, 1949, Capitol deducted $5,966.26, the amount distributed to holders of Founder's Stock, claiming this as a deduction under Sec. 23(a) of the Internal Revenue Code of 1939. The Commissioner disallowed such a deduction and his disal-

lowance was sustained by the Tax Court, three judges dissenting. From this decision Capitol has appealed.

Thus, the sole question for our determination is whether the payments made by Capitol in 1949 to the holders of Founder's Stock, pursuant to the terms of the cancellation agreement, were deductible as an ordinary and necessary business expense within the meaning of Sec. 23(a).

In support of the decision of the Tax Court, the Commissioner has advanced two arguments: (1) that the payments made by Capitol were in the nature of dividends rather than business expenses and (2) that even if viewed as business expenses the payments were not ordinary and necessary within the purview of the statute. At the outset it is well to keep in mind that the payments made by Capitol were made only to the holders of Founder's Stock. The payments were made under an agreement that was a valid and binding one and one which was approved and sanctioned by the proper regulatory bodies of the State of Indiana. We should further remember that there is not so much as an intimation that the transactions here involved were in bad faith or undertaken as a tax avoidance scheme. The stipulated facts further show that it was absolutely necessary that Capitol cancel the agency agreement with Underwriters if it was to continue the operation of its business. It is to be further noted that Underwriters had a valid and subsisting agency agreement and it would be necessary under ordinary circumstances that it be in some way compensated and relieved of certain obligations before it would agree to its cancellation.

We believe that the Commissioner's argument entirely overlooks these salient factors in reaching the conclusion that these expenses were not ordinary and necessary under Sec. 23(a). There could be nothing more ordinary and necessary, in our view, than for Capitol to abrogate by any means available an agency con-

tract, the existence of which made it impossible for it to operate profitably. Suppose that the operation under the original agreement with Underwriters had been successful. It could hardly be open to doubt but that payment made to Underwriters would have constituted an ordinary and necessary expense and, therefore, would be deductible. We think that the payments made by Capitol in order to free itself from the burdensome contract were likewise an ordinary and necessary expense, and deductible. The language of the Supreme Court in Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 252, 88 L.Ed. 171, is pertinent:

"It is plain that respondent's legal expenses were both 'ordinary and necessary' if those words be given their commonly accepted meaning. For respondent to employ a lawyer to defend his business from threatened destruction was 'normal'; it was the response ordinarily to be expected. Cf. Deputy v. du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 367, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212; Kornhauser v. United States [276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505]. Since the record contains no suggestion that the defense was in bad faith or that the attorney's fees were unreasonable, the expenses incurred in defending the business can also be assumed appropriate and helpful, and therefore 'necessary.' Cf. Welch v. Helvering, supra, 290 U.S. at page 113, 54 S.Ct. at page 8, 78 L.Ed. 212; Kornhauser v. United States, supra, 276 U.S. at page 152, 48 S.Ct. at page 220, 72 L.Ed. 505."

The contention of the Commissioner that the payments herein made were in the nature of a dividend rather than business expenses is not, in our view, correct. The cases cited in support of this argument afford little help in this type of case. As was stated by the court in Commissioner of Internal Revenue v

Heininger, supra, 320 U.S. at page 473, 64 S.Ct. at page 253:

"A review of the situations which have been held to belong in this category would serve no useful purpose for each case should depend upon its peculiar circumstances."

It must be further noted that Capitol was obligated, whether or not there were any profits, to make the payments to the holders of Founder's Stock under the assumption of this obligation from Underwriters. Capitol only made the payments in question to the holders of Founder's Stock and not to any other stockholders. We believe that these facts, that Capitol did not originally enter into the agreement with the holders of Founder's Stock, that payments were made only to the holders of Founder's Stock, and that such payments had to be made regardless of earnings or profits, are not only significant but controlling. There can be no doubt but that the payments were an expense rather than in the nature of a dividend.

The decision of the Tax Court is reversed.