CHARLES V. FELLRATH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fellrath v. Commissioner
Docket No. 15197-79.
United States Tax Court
T.C. Memo 1981-476; 1981 Tax Ct. Memo LEXIS 272; 42 T.C.M. (CCH) 939; T.C.M. (RIA) 81476; August 31, 1981. Charles V. Fellrath, pro se. Larry D. Anderson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1977 in the amount of $ 1,936.33. The issues for decision primarily involve substantiation, i.e., whether petitioner is entitled to deductions *274 for (1) automobile expense, (2) travel and entertainment, (3) depreciation on office furniture, (4) political contributions, and (5) rent for a safe-deposit box. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Dearborn, Michigan at the time that he filed his petition in this case. He filed a Federal income tax return for the calendar year 1977 with the Internal Revenue Service Center at Cincinnati, Ohio. On his return he claimed business deductions for automobile expense, travel and entertainment, and depreciation on office furniture. He also claimed miscellaneous deductions for political contributions and rent for a safe-deposit box. Respondent disallowed all of these deductions in their entirety. Petitioner disputed the disallowance and petitioned this Court for a redetermination. Petitioner is an attorney and has been engaged for a number of years in the general practice of law. About 35 to 40 percent of his practice involves domestic relations and divorce; a part also involves tax. During 1977 he was one of two principals in a law firm known as "Keane & Fellrath, P.C." The firm was located in Dearborn and *275 was organized as a professional corporation. Petitioner's firm had a number of policies concerning expenses incurred by its attorneys in servicing established clients and developing new clients. Those policies, as formulated and adopted by its board of directors, were as follows: Travel and entertainment expenses borne by any of the individual attorneys in the P.C. for the purpose of increasing the P.C.'s income through obtaining new clients shall be reimbursed by the P.C. to the individual attorney if after review by the board of directors it is determined that the individual attorney's expenditures directly resulted in gaining new clients for the firm. Individual attorney expenses for developing new business for the P.C. are encouraged and each attorney should shoulder part of the burden of increasing the business. As to automobile mileage, maintenance and parking expenses, which are proper elements of conducting P.C. business but which cannot practically be allocated to specific clients due to the time consuming nature of precise recordings, such expenses shall not be reimbursable. All other expenses which are specifically determinable to relate to established clients *276 in pursuance of their legal business or development costs which are pre-determined as appropriate P.C. ventures shall continue to be paid directly from the P.C. funds. All expenses which are related to personal business or pleasure and unrelated to developing the business of the P.C. should be absorbed by each individual attorney without reimbursement or set-off against personal income. Automobile Expense
During 1977 petitioner used his personal automobile in pursuit of his law practice. He regularly attended court in Dearborn as well as in Detroit and other surrounding cities. He also drove to various meetings, closings, and depositions in those communities. On occasion he would travel greater distances to cities such as Pontiac and Jackson to attend court or a meeting. On his 1977 income tax return petitioner claimed a deduction for automobile expense in the amount of $ 2,200. He determined this amount by multiplying 10,000 business miles by the optional standard mileage rate (17 cents per mile for the first 15,000 business miles), and by adding thereto $ 500 for parking fees and tolls. See Rev. Proc. 74-23, 1974-2 C.B. 476, as modified by Rev. Proc. 77-40, 1977-2 C.B. 574. *277 The claimed 10,000 business miles were based on estimates for prior years. Petitioner also undertook to reconstruct his business mileage based on his 1977 appointment book, and by that method he determined that he had driven approximately 8,975 business miles during 1977. He asserted that the estimate excluded mileage for commuting. During 1977 petitioner drove 7,500 business miles and expended $ 375 for parking fees and tolls. Travel and Entertainment
On his 1977 income tax return petitioner deducted $ 11,969.01 [1] for what he characterized as "business development." This amount represents expenses incurred for travel and entertainment. According to petitioner, it was expended in order to obtain new clients for law firm. Most of the total amount deducted for travel and entertainment relates to a trip which petitioner took to Palm Springs, California from April 23, 1977 to May 1, 1977. During his stay in Palm Springs petitioner was accompanied by two college friends. One of the friends was a vice-president of a manufacturing company located in Chicago; *278 the other was a regional manager of a computer company located in Lowell, Massachusetts. Petitioner did not have any prior professional relationship with either of these individuals, nor had he previously done any legal work for either of their companies. The alleged purpose of the trip was to gently persuade them to retain him as counsel. [2] However, despite the daily round of golf, he was not successful. [3]
A schedule itemizing petitioner's expenditures for travel and entertainment during 1977 reflects the following expenses incurred during his week at Palm Springs: Date
Item
Amount
4/12/77
Deposit on condominium
$ 250.00
accommodations
4/24/77
golf
136.01
green fees--$ 100
cart rental--$ 24
snacks--$ 12.01
4/24/77
dinner
174.00
4/26/77
dinner
139.98
4/29/77
golf
124.00
green fees--$ 100
cart rental--$ 24
4/29/77
dinner
112.00
4/30/77
dinner
140.00
Total
$ 1,075.99
*279 Petitioner's schedule, arranged according to his success in obtaining new clients, also reflects the following expenses incurred during the remainder of 1977: Date
Item
Amount
Successful
6/29/77
lunch
$ 33.00
8/5/77
[4] dinner 60.00
Total
$ 93.00
Not Successful
1/14/77
dinner
30.00
(Naples, Fla.)
5/18/77
dinner
33.27
7/13/77
dinner
48.00
7/21/77
lunch or dinner
23.00
8/24/77
dinner
175.00
8/25/77
airfare
138.00
(Rheinlander,
Wisconsin)
8/26/77
dinner
72.00
(Tomahawk,
Wisconsin)
10/6/77
dinner
179.75
10/21/77
dinner
105.00
Total
$ 804.02
Grand Total
$ 897.02
At trial petitioner attempted to substantiate payment of the above items. He introduced two cancelled checks, three credit card statements, and certain other documents, including several stubs from restaurant checks and two pages from his appointment book. *280 He substantiated to our satisfaction the expenditures for the condominium deposit, both golf outings, the airfare to and from Wisconsin, and the dinners on January 14, April 30, May 18, and June 29. His efforts to substantiate payment of the remaining items, all meals, were complicated by his practice of generally charging the less expensive meals while paying cash for the more expensive ones. [5] His efforts were further complicated by certain inadequacies of the restaurant stubs, the primary documentary evidence relief upon by him. Thus, the stubs appear to have been completely filled out by petitioner at some unspecified time. Moreover, they do not generally reflect the printed name of the restaurant, and in the only instance where a register amount appears, the handwritten amount exceeds it by over $ 100. Finally, petitioner's efforts to substantiate *281 payment were complicated by his reliance on his appointment book [6] despite the fact that he chose not to offer it as an exhibit. [7] Rather, he removed two pages from it and introduced them instead.These pages relate to meals which cost $ 60 and $ 72; however, the record does not disclose when the entries were made. Remaining Deductions
In 1974 petitioner purchased several pieces of used office furniture for $ 1,650. He determined that the furniture had a useful life of ten years and computed depreciation using *282 the straight-line method. He did not, however, take salvage value into account. Thus, on his 1977 income tax return he claimed a deduction for depreciation in the amount of $ 165. On his 1977 income tax return petitioner claimed a deduction for political contributions in the amount of $ 80. At trial, however, he was only able to document the payment of $ 20. Petitioner maintained a safe deposit box at a bank in Dearborn. During 1977 he paid rent in the amount of $ 9 for the use of the box. OPINION This is essentially a substantiation case involving a number of factual issues. We have attempted to resolve these issues as best we can with a record that is somewhat inadequate. In so doing we have been guided by several general principles. First, deductions are a matter of legislative grace. New Colonial Co. v. Helvering, 292 U.S. 435, 440 (1934). Thus, petitioner must satisfy all statutory prerequisites in order to be entitled to a deduction. Second, under section 6001 [8] petitioner is required to maintain records sufficient to establish the amount of any deduction claimed by him on his income tax return. See also section 1.6001-1(a), Income Tax Regs. *283 Third, petitioner is not entitled to any deduction unless he can substantiate it. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). In other words, it is petitioner, and not respondent, who bears the burden of proof on each of the issues in this case. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
1. Automobile Expense
Respondent does not question that petitioner is entitled to a deduction for automobile expense but only disputes the amount. We have already found as a fact that during 1977 petitioner drove 7,500 business miles and expended $ 375 for parking fees and tolls. Respondent contends, however, that these amounts should be reduced to reflect the fact that petitioner could have been reimbursed by his firm for at least a part of the expense incurred. It is well settled that a taxpayer is not entitled to deduct an expense for which he could have been reimbursed by *284 his employer had a claim been made. Coplon v. Commissioner, 277 F.2d 534 (6th Cir. 1960), affg. a Memorandum Opinion of this Court; Podems v. Commissioner, 24 T.C. 21 (1955); Neal v. Commissioner, T.C. Memo. 1981-172. Here, however, the policy of petitioner's firm was not to reimburse its attorneys for any automobile expense which was not charged to specific clients because of the administrative burden. Although not every expense incurred by petitioner was of the "nickel and dime" kind, we are satisfied that reimbursement was not available. Accordingly, we hold that he is entitled to a deduction for automobile expense in the amount of $ 1,650. [9]
2. Travel and Entertainment
An item is deductible as a business expense under section 162(a) [10] only if it satisfies a number of requirements, first and foremost of which is that it must be incurred in a trade or business carried on by the taxpayer. If it is not *285 directly related but rather is personal in nature, it is not deductible. Section 262; sections 1.162-1(a) and 1.162-2(a), Income Tax Regs. As the Supreme Court has stated: Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances. Except where a question of law is unmistakably involved a decision of the [Tax Court] on these issues, having taken into account the presumption supporting the Commissioner's ruling [footnote omitted], should not be reversed by the federal appellate courts [footnote omitted]. Careful adherence to this principle will result in a more orderly and uniform system of tax deductions in a field necessarily beset by innumerable complexities. * * * [Commissioner v. Heininger, 320 U.S. 467, 475 (1943).] In the case of expenses for travel and entertainment, section 274 imposes additional requirements for their *286 deductibility. See section 1.274-1, Income Tax Regs. Thus, under the general rule of section 274(a)(1) [11] expenditures for entertainment, amusement, and recreation are not deductible unless they are directly related to or associated with the active conduct of the taxpayer's trade or business. See section 1.274-2, Income Tax Regs. Moreover, expenditures for travel and entertainment are not deductible unless substantiated as provided by section 274(d). [12] The latter requirement is expressly designed to supersede the doctrine of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). See Section 1.274-5(a), Income Tax Regs.
*287 The application of the above principles to the expenditures involved in this case will be facilitated if those expenditures are grouped into certain categories. Thus, we start with the ones incurred during petitioner's trip to Palm Springs. a. We do not think that petitioner has convincingly established that the Palm Springs trip was directly related to his trade or business as an attorney. Rather, the available evidence suggests that this trip was nothing other than a spring golf outing with two college friends who just happened to be corporate managers. Undoubtedly petitioner would have benefited from having his friends' companies as clients. However, he was well aware of the fact that one was headquartered in Chicago and one in Lowell, Massachusetts, and that the latter employed a staff of attorneys which handled its legal work on a national basis. The record does not disclose how much business the Chicago company may have done in and around Dearborn, and whether such (if any) necessitated local counsel. [13]
*288 Also of significance is the fact that petitioner had not previously done any legal work for either of his friends' companies. This being the case, we find it unlikely that any business discussion could have lasted an entire week. We also do not understand why it was necessary to conduct any such discussion several thousand miles away from the various individuals' offices. The pattern of expenses incurred also suggests that the trip was personal in nature. Thus, petitioner testified that the $ 250 deposit he paid on the condominium represented just part of the total cost of accommodations; the balance was paid by his friends. Moreover, petitioner testified that he and his friends played golf on a daily basis. He, however, only paid for two rounds. Finally, petitioner paid for four dinners, more than his share. However, he did not pay for any breakfasts or lunches and only bought one inexpensive snack after a round of golf. Considering petitioner's testimony that he spent the entire week in the company of his friends, we think the above facts suggest that he was merely sharing expenses on a personal trip to southern California in anticipation of summer.
Even if petitioner's *289 week in Palm Springs could somehow be construed as a business trip, there remain impediments to its deductibility. Thus, we fail to see how the expenses incurred were directly related to the active conduct of his trade or business within the meaning of section 274(a)(1). See sections 1.274-2(b)(1)(i) and (c), Income Tax Regs. Moreover, petitioner played golf with, and paid for, a fourth individual. [14] Cf. section 1.274-2(c)(7)(ii)(b), Income Tax Regs. He testified, however, that the trip was only for the purpose of securing his two friends' companies as clients. Finally, we question whether petitioner adequately substantiated the amount of the expenditures for dinners (other than the one on April 30, 1977) within the meaning of section 274(d). See section 1.274-5(c), Income Tax Regs. In this regard reference is made to our findings of fact concerning petitioner's efforts to substantiate payment. b. The next group of expenditures again relates to petitioner's professed efforts to secure his two friends' companies *290 as clients. In August 1977 petitioner spent three or four days at a lodge in Tomahawk, Wisconsin, in the company of his Chicago friend and his friend's father and uncle, the owners of the manufacturing company. [15] He incurred airfare in the amount of $ 138 and paid $ 72 for dinner one of the evenings. On October 21, 1977, petitioner took his two college friends to dinner in Detroit and paid $ 105. Again we do not think that petitioner has convincingly demonstrated the business purpose of these expenditures, all of which appear to us to be personal in nature for much the same reasons as before. [16] Thus, under the circumstances, a three or four day trip to a lodge in northern Wisconsin strikes us as more of a summer excursion than a business undertaking, especially when one considers that petitioner appears to have been the guest of his friend. Similarly, the October dinner appears to have been nothing other than a convenient get-together of three friends.
*291 c. The next group of expenditures relates to meals which led to the guest becoming one of petitioner's clients. Included in this group is a lunch on June 29, 1977, in the amount of $ 33 and a dinner on August 5, 1977, in the amount of $ 60. The record indicates that petitioner could have been reimbursed by his firm for these expenditures. The fact that he may have neglected to seek reimbursement is simply irrelevant. As we stated above, a taxpayer is not entitled to deduct an expense for which he could have been reimbursed by his employer had a claim been made. Coplon v. Commissioner, 277 F.2d 534 (6th Cir. 1960), affg. a Memorandum Opinion of this Court; Podems v. Commissioner, 24 T.C. 21 (1955); Neal v. Commissioner, T.C. Memo. 1981-172. d. The next group of expenditures consists of four meals on July 13, 1977, July 21, 1977, August 24, 1977, and October 6, 1977, in the aggregate amount of $ 425.75. Assuming compliance with all other requirements, petitioner is not entitled to deduct this amount because he failed to substantiate payment under section 274(d). He did not introduce adequate records, section 1.274-5(c)(2), *292 Income Tax Regs., nor did he make any effort to substantiate the amounts by other sufficient evidence, by establishing exceptional circumstances, or by demonstrating loss of records due to circumstances beyond his control, sections 1.274-5(c)(3), (4), and (5), Income Tax Regs.
e. The last group of expenditures consists of two miscellaneous items, a dinner on January 14, 1977, in the amount of $ 30 and another dinner on May 18, 1977, in the amount of $ 33.27. The January dinner took place in Naples, Florida and involved an individual whom petitioner had represented in Michigan before he moved to Florida. [17] Petitioner testified that the dinner discussion involved this individual's restaurant/bar just outside of Naples. We cannot imagine, however, that petitioner was seriously attempting to recruit this individual as a client. There is nothing in the record to indicate that he was licensed to practice in Florida or indeed that he did any interstate practice at all.There is similarly nothing in the record to even remotely suggest that it would have been sensible, either economically or practically, for an individual to retain a Michigan attorney to render legal services in *293 respect of a restaurant/bar located in Florida. Thus, we are unpersuaded that this was a business dinner. The last item involves the May dinner. Although petitioner testified that the discussion involved a divorce, he did not introduce any written statement substantiating the business purpose as required by section 1.274-5(c)(2)(ii)(b), Income Tax Regs. On this record we cannot say that the surrounding circumstances were such that a written explanation is not required. [18]
For the various reasons set forth above with respect to the claimed travel and entertainment expense, we conclude that petitioner is not entitled to any deduction for such expenses. 3. Remaining Deductions
Apart from substantiation, respondent does not question petitioner's entitlement to the deductions claimed for depreciation, political contributions, and rent for the safe deposit box. In our findings of fact we found that *294 petitioner expended $ 1,650 for office furniture, $ 20 for political contributions, and $ 9 for rent for the safe deposit box. Accordingly, we hold that he is entitled to a deduction for political contributions in the amount of $ 20, see section 218(b)(2), sections 1.218-0 and 1.41-5, Income Tax Regs., and a deduction for rent for the safe deposit box in the amount of $ 9, see section 1.212-1(a)(1), Income Tax Regs. Although we find petitioner's 10-year estimate of the useful life of the used office furniture to be reasonable, he failed to take salvage value into account in determining depreciation. See sections 1.167(a)-1(c)(1) and 1.167(b)-1(a), Income Tax Regs. Based on all of the facts and circumstances, we think that a reasonable estimate of salvage value is $ 150. Accordingly, we hold that petitioner is entitled to a deduction for depreciation in the amount of $ 150. To reflect our conclusions, Decision will be entered under Rule 155. Footnotes
1. At trial petitioner broke this amount down into individual items, the sum of which aggregated $ 1,973.01.↩
2. In this regard petitioner testified as follows: Throughout the whole week there were discussions as far as business was concerned, and whenever possible, you know, my attempts to convince them that possibly they should become clients of mine within the realm of reason, of course. I wasn't beating their brains out on a daily basis in that regard. ↩
3. According to petitioner, he did handle "a very minor matter" for the computer company in an "isolated situation" sometime during 1980.↩
4. Petitioner's schedule states that the individual entertained on this occasion "did become a client--(no reimbursement)." Petitioner testified, however, that the individual did not become a client. We are inclined to give greater credence to his schedule than to his testimony.↩
5. Expenditures for fourteen meals are involved in this case. Petitioner testified that four, in the amounts of $ 174, $ 139.98, $ 60, and $ 175, were paid in cash and that four, in the amounts of $ 30, $ 140, $ 33.27, and $ 33, were charged to a bank credit card. The medium of payment for the remaining six is not known.↩
6. In his schedule of expenditures petitioner cities his appointment book in order to substantiate seven meals, including ones for $ 175 and $ 179.75. ↩
7. Some four months after the trial and submission of this case respondent informally forwarded the appointment book to the Court, presumably as an exhibit. On brief he argues that it is admissible under Rule 106 of the Federal Rules of Evidence. We disagree.By its terms the rule contemplates action by the adverse party at the time that↩ the other party seeks to introduce part of a writing. Accordingly, we do not consider this book to be part of the record in this case.
8. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
9. This amount is determined as follows: 7,500 business miles at 17 cents per mile, or $ 1,275, plus $ 375 for parking fees and tolls. Cohan v. Commissioner, 39 F.2d 540, 543-544↩ (2d Cir. 1930).
10. Sec. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * *↩
11. Sec. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.-- (1) IN GENERAL.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) ACTIVITY.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, * * * and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. ↩
12. Sec. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) SUBSTANTIATION REQUIRED.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
13. We think it noteworthy that despite at least four years of professed effort, petitioner still has not obtained any business whatsoever from the Chicago company.↩
14. The record does not disclose whether petitioner shared the condominium with this individual and otherwise spent the entire week in his company.↩
15. The record does not disclose who else may have been present at the lodge.↩
16. Insofar as the Wisconsin trip is concerned, petitioner failed a forfiori to satisfy the "directly related" requirement of section 274(a). See section 1.274-2(c), Income Tax Regs.↩ In the case of the expenditures for both meals, he also failed to substantiate payment under section 274(d).
17. The record does not indicate why petitioner was in Florida or whether he had any personal relationship with his former client.↩
18. There is, for example, some question whether the divorce discussion occurred during the May dinner or during a meal in April.↩