FIRST NATIONAL BANK OF BELLAIRE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
First Nat'l Bank v. Commissioner
Docket No. 9404-93.
United States Tax Court
T.C. Memo 1994-312; 1994 Tax Ct. Memo LEXIS 315; 68 T.C.M. (CCH) 35; July 7, 1994, Filed *315 Decision will be entered for respondent. For petitioner: Kenneth M. Slack
For respondent: Dennis M. Kelly ARMEN
ARMEN
MEMORANDUM FINDINGS OF FACT AND OPINION ARMEN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1990 in the amount of $ 8,549. The issues for decision are: (1) Whether petitioner's payment of obligations incurred by third parties is deductible as an ordinary and necessary expense within the meaning of section 162; and (2) whether petitioner's payment of legal fees in connection with certain litigation is deductible as an ordinary and necessary expense within the meaning of section 162. FINDINGS OF FACT Some of the facts have been *316 stipulated, and they are so found. At the time the petition was filed in this case petitioner's principal business location was in Bellaire, Texas. First National Bank of Bellaire (hereinafter referred to as petitioner or Bank of Bellaire or the Bank) has been in business since August 1963. It has earned a profit every year, at least since 1967, due to its conservative approach to banking. One means by which the Bank enhanced its profitability during the year in issue was to establish ties with other banks. The establishment of ties with other banks benefitted Bank of Bellaire because, among other things, such relationships provided a market for the sale and purchase of loan participations, [2] *317 enabled the bank to share participations in letters of credit, [3] and provided a referral network. The Mayde Creek Bank (Mayde Creek Bank or Mayde Creek) was one of the banks with which petitioner had close ties during the year in issue. Mayde Creek Bank was granted a charter to operate (the charter) on or about October 1, 1986, although the preliminary organization of Mayde Creek Bank had begun in late 1984 or early 1985. The organizers of Mayde Creek were G. Warren Coles, Jr. (Mr. Coles), Dr. Harold Daily (Dr. Daily), Joel Levy (Mr. Levy), Dr. Roy Olsen (Dr. Olsen), and Robert Vickery. [4] The organizers were responsible for conducting transactions on behalf of Mayde Creek Bank prior to the time it received the charter. The majority of tasks relating to the organization of Mayde Creek Bank occurred at Bank of Bellaire. The principal shareholders of Bank of Bellaire owned more than 50 percent of Mayde Creek Bank. *318 At the time Mayde Creek Bank was being organized, it was the policy of the Comptroller of the Currency not to issue a charter to a new bank until a building had been constructed and furnished for the bank. Consequently, Mr. Coles and Robert Vickery borrowed money to buy the land and to build a bank building (the new building) that would become the "home" of Mayde Creek Bank. Petitioner provided the organizers of Mayde Creek Bank with a loan or a line of credit to finance the organization of the bank, as well as its construction and outfitting. As security, Bank of Bellaire held an interest in the land and building that would become Mayde Creek Bank. Petitioner's financial risk in the organization of Mayde Creek Bank was limited to the usual risks associated with providing a loan or line of credit to a customer. Constance Vickery (Mrs. Vickery), the wife of Charles Vickery, during the period 1985 through 1990, was primarily responsible for decorating the building. She ordered the carpet for the bank from the Texas Carpet Company (Texas Carpet) and negotiated the terms of the purchase agreement (the agreement) with Texas Carpet. Petitioner was not a party to the agreement with *319 Texas Carpet. Had the terms of that agreement been satisfied, Mayde Creek Bank would have been responsible for paying the costs related to the purchase and installation of the carpet from Texas Carpet. Problems arose, however, and the contract was the basis of a lawsuit (the lawsuit) brought by Texas Carpet. The lawsuit filed by Texas Carpet in the District Court of Harris County (the trial court) alleged breach of contract and conversion against Charles Vickery, Mrs. Vickery, and Mr. Coles, individually (collectively, the defendants) and d/b/a/ Mayde Creek Bank. Texas Carpet's original petition indicated that the individual defendants were also being sued as trustees of both Mayde Creek Bank and Bank of Bellaire. [5]Texas Carpet's amended petition indicated that the lawsuit would proceed against the defendants individually only. *320 Subsequently, the participation of Mayde Creek Bank and Bank of Bellaire (the Banks) in the lawsuit was limited to self-initiated actions. Specifically, along with the defendants, the Banks filed a cross-action complaint against Texas Carpet and others for libel, slander, and malicious prosecution. After the trial court rendered its judgment (the judgment), which found in favor of Texas Carpet, dismissing the cross-action complaint and holding Charles Vickery, Mrs. Vickery, and Mr. Coles jointly and severally liable for the judgment, the Banks joined the defendants in appealing the judgment. The Texas appeals court affirmed the judgment and held the defendants and the Banks, as well as their surety, jointly and severally liable for payment of costs incurred as a result of the appeal. [6]
After the appeals court rendered its decision, petitioner paid $ 37,519.47 to Texas Carpet. In exchange for this payment, the Banks and the defendants received a "Special Release" from Texas Carpet *321 in settlement of the lawsuit. Mayde Creek Bank reimbursed petitioner for 50 percent of the payment, an amount totaling $ 18,759.74. Mr. Coles testified that Bank of Bellaire paid 50 percent of the settlement costs (the settlement costs) because "it was just fair that we share." An additional payment of $ 6,384 (the additional payment) was made by petitioner to a law firm which had provided legal services in connection with the lawsuit. Petitioner claimed both the settlement costs (excluding the amount reimbursed by Mayde Creek Bank) and the additional payment, a total of $ 25,143.74, as "professional fees" ("the professional fees") on its 1990 corporate income tax return. Respondent determined that "the professional fees" were not "ordinary and necessary" within the meaning of section 162 because they were not expenses of petitioner. Consequently, respondent disallowed the deduction claimed by petitioner for "the professional fees". OPINION As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *322 Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.
We begin by addressing whether "the professional fees", in whole or in part, were ordinary and necessary expenses within the meaning of section 162. Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The regulations promulgated under section 162 clarify that only those ordinary and necessary business expenses "directly connected with or pertaining to the taxpayer's trade or business" may be deducted. Sec. 1.162-1(a), Income Tax Regs.
Whether an expenditure is ordinary and necessary is generally a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). To be "necessary" within the meaning of section 162, an expense need only be "appropriate and helpful" to the taxpayer's business. *323 Welch v. Helvering, supra at 113. The requirement that an expense be "ordinary" is perhaps more rigorous because "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved." Deputy v. DuPont, 308 U.S. 488, 495 (1940), (citing Welch v. Helvering, supra at 114). As a general rule, payment by one taxpayer of another taxpayer's expenses is not deductible as an ordinary and necessary business expense. Welch v. Helvering, supra at 114; see also Concord Instruments Corp. v. Commissioner, T.C. Memo. 1994-248, and the cases cited therein. As petitioner correctly notes, exceptions to this general rule do exist. E.g., Metro Land Co. v. Commissioner, T.C. Memo. 1981-335. Payment of another taxpayer's expenses has been found to be deductible when the payment was "made to retain or protect and promote an established business." Id. Thus, the general rule has not been applied when "the taxpayer brought forth compelling evidence proving that *324 it had directly and proximately protected its own preexisting business by assuming the debts of another." Nalco Chem. Co. and Subs. v. United States, 561 F. Supp. 1274, 1282 (N.D. Ill. 1983); see also Carbine v. Commissioner, 83 T.C. 356 (1984), affd. 777 F.2d 662 (11th Cir. 1985). In Metro Land Co. v. Commissioner, supra, the Court concluded that payments made by one corporation to satisfy the debts of companies with common shareholders were ordinary and necessary because the taxpayer in that case could only obtain a needed loan by making the payments. Id. That case is distinct from the one before us by virtue of the fact that the survival of the taxpayer in Metro Land Co. might have been jeopardized had it had not made the payments. Here, by contrast, not only would petitioner's survival not have been jeopardized if it not paid one-half of the settlement costs, but its relationship with Mayde Creek Bank would not have suffered, because the relationship was, as demonstrated by the record, mutually beneficial. Moreover, we note that in Metro Land *325 Co. we indicated our view that the payments there in issue appeared to have been constructive dividends, but declined to decide the case on that issue, which had not been raised by the Commissioner. [7]
We do not view this case as an instance where the exception rather than the rule applies. It is clear from the record that petitioner was not obliged to pay any part of the judgment against the defendants. Although the payment may have indirectly benefitted petitioner, the benefit to petitioner (as distinct from the benefit to certain of petitioner's shareholders), was not significantly different from the benefit that would have been derived had petitioner decided to pay the debts of any other person or institution with which it wanted to maintain good relations. *326 Consequently, in the absence of evidence that payment of the debts of other persons is a common or frequent occurrence in the banking business, we are unable to conclude that the payment of the settlement costs was both ordinary and necessary within the meaning of section 162. See Deputy v. DuPont, supra; Welch v. Helvering, supra.
In addition to the payment of the settlement costs, petitioner claimed as an ordinary and necessary expense the payment of $ 6,384 to the law firm which had provided legal services in connection with the lawsuit. Petitioner presented no persuasive evidence that these fees related to petitioner's cross-action complaint or appeal. Consequently, we are unable to make any allocation. Compare Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), with Vanicek v. Commissioner, 85 T.C. 731, 743 (1985), and Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In the absence of proof that "the professional fees" were related to the cross-action complaint and appeal and that they were *327 ordinary and necessary expenses of petitioner, we are bound to sustain respondent's determination on this issue as well. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Because we have concluded that the payments in issue are not ordinary and necessary expenses, which is dispositive of the case before us, we need not consider the other theories raised by respondent to support her position. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Federal law limits the percentage of a bank's capital that a bank may lend directly to a single borrower. A bank may lend a larger amount of money by engaging in loan participations with other banks. By sharing both the risk and the interest on the loans, each bank benefits from the ability to make larger loans.↩
3. A letter of credit creates indebtedness similar to that created by a loan.↩
4. Although the parties have stipulated that these five individuals were the official organizers of Mayde Creek Bank, it is clear from the record that Charles Vickery was actively involved in the organization of the Mayde Creek Bank.↩
5. During 1990, the year in issue, the following individuals were members of both the board of directors of Mayde Creek Bank and the board of directors of Bank of Bellaire: Mr. Coles, Dr. Daily, Mr. Levy, Dr. Olsen, and Robert Vickery. Mrs. Vickery and two other individuals were the other members of the board of directors of Mayde Creek Bank. The other members of the board of directors of Bank of Bellaire were Charles Vickery and four other individuals.↩
6. These costs totaled $ 77.31.↩
7. In the case before us, respondent did raise the issue by way of an amendment to her answer. However, based on our conclusion that the payments in question were not ordinary and necessary expenses, we need not address the issue of constructive dividends.↩